MILWAUKEE TEACHERS' EDUCATION ASSOCIATION, James Roe 1–5 and Jane Roe 1–2, Plaintiffs-Appellants,

v.

MILWAUKEE BOARD OF SCHOOL DIRECTORS, Joseph Fisher and Robert C. Jasna, Defendants-Respondents,

JOURNAL SENTINEL, INC., Defendant-Intervenor-Respondent-Petitioner.

Supreme Court

*No. 97–0308. Oral argument March 2, 1999.—Decided July 8, 1999.*

(Also reported in 596 N.W.2d 403.)

780

For the defendant-intervenor-respondent-petitioner there were briefs by *David Lucey, Paul Bargren* and *Foley & Lardner*, Milwaukee and oral argument by *David Lucey*.

For the plaintiffs-appellants there was a brief by *Richard Perry, Robert J. Lerner, B. Michele Sumara* and *Perry Lerner, Quindel & Saks, S.C.*, Milwaukee and oral argument by *Robert J. Lerner*.

Amicus curiae brief was filed by *James A. Friedman, Robert J. Dreps* and *LaFollette & Sinykin*, Madison for the WI Newspaper Association, the WI Broadcasters Association and the Freedom of Information Council.

Amicus curiae brief was filed by *Melissa A. Cherney* and *Chris Galinat*, as counsel, Madison, for the Wisconsin Education Association Council.

Amicus curiae brief was filed by *Bruce F. Ehlke, Aaron N. Halstead* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Madison, for District Council 40, AFSCME, AFL-CIO.

Amicus curiae brief was filed by *Gordon E. McQuillen* and *Cullen, Weston, Pines & Bach*, Madison, for the Wisconsin Professional Police Association.

Amicus curiae brief was filed by *Jon P. Axelrod* and *DeWitt, Ross & Stevens, S.C.*, Madison, for Stephen M. Kailin & Linda Kailin.

¶ 1. N. PATRICK CROOKS, J. The issue in this case is whether public employees are entitled to *de novo* judicial review under *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), when a records custodian who is not a district attorney decides to release information from the employees' personnel records in response to a request made under Wiscon-

sin's open records law, Wis. Stat. §§ 19.31–.39 (1995–96).[1] We hold that the *de novo* judicial review we recognized in *Woznicki* applies in all cases in which a record custodian decides to disclose information implicating the privacy and/or reputational interests of an individual public employee, regardless of the identity of the record custodian. Therefore, we affirm the decision of the court of appeals and remand the case to the circuit court for purposes of conducting a *de novo* review.

I.

¶ 2. The facts of this case are undisputed. As a result of a 1995 district-wide criminal background check, Milwaukee Public Schools (MPS) discovered that 548 of its employees had criminal records. MPS released the names and criminal records of these employees to the Journal Sentinel, Inc. (Journal-Sentinel).

¶ 3. Among the names released were those of plaintiffs James Roe 1–5 and Jane Roe 1–2, all of whom had been convicted of misdemeanors. Six of the plaintiffs were educational assistants and one was a physical education teacher. As a result of the background check, approximately 18 MPS employees, including the seven plaintiffs, were discharged by MPS or resigned under threat of discharge.

¶ 4. In a December 3, 1996, letter, a Journal-Sentinel reporter invoked Wisconsin's open records law and requested the names, positions, building assignments, and hiring dates of any MPS employees who were fired, quit, or were disciplined as a result of the

[1] Unless otherwise noted, all statutory references are to the 1995–96 version of the Wisconsin Statutes.

782

criminal background check. The reporter also wanted to know the specific action taken against each employee and whether any formal grievances had been filed.

¶ 5. Raymond Nemoir, Executive Director of MPS' Department of Human Resources and MPS' personnel records custodian, handled the Journal-Sentinel's request. By letter dated January 3, 1997, Nemoir notified each of the plaintiffs of his decision to release their names, positions, building assignments and hiring dates to the Journal-Sentinel unless they sought the *de novo* review provided by *Woznicki* within 10 days. Nemoir indicated that he had performed the required balancing test and had concluded that the public interest in releasing the records outweighed any potential harm to the employees' privacy and reputational interests.

¶ 6. On January 13, 1997, the Milwaukee Teachers' Education Association (the "MTEA") and the seven individual plaintiffs filed this action in Milwaukee County Circuit Court seeking to prevent MPS from releasing the requested information pending *de novo* review of Nemoir's decision. The circuit court granted the Journal-Sentinel's motion to intervene and issued an order temporarily restraining the Milwaukee Board of School Directors (MBSD) from releasing information pertaining to the seven plaintiffs.[2]

---

[2] The only information plaintiffs object to releasing is their names and specific school assignments because those items would allow plaintiffs to be identified. The plaintiffs' identities have not been made public, but it should be noted that the name of one of them appears in the minutes of the MBSD meeting in which the person was discharged from a position at MPS. Apparently, there was never any publicity about the discharge.

¶ 7. The circuit court, Judge Victor Manian presiding,[3] held an evidentiary hearing beginning on January 21, 1997, and continuing to January 27, 1997. After hearing the evidence presented and the testimony of Nemoir, Judge Manian determined that *Woznicki* was limited to situations involving records custodians who are district attorneys. Consequently, Judge Manian did not perform the *de novo* review contemplated by *Woznicki*.[4] Instead, he dismissed the action for lack of subject matter jurisdiction, a ruling he confirmed in a written order filed January 29, 1997.[5]

¶ 8. The court of appeals reversed in a decision filed May 12, 1998. *Milwaukee Teachers' Educ. Ass'n v.*

---

[3] Judge Manian presided over all circuit court proceedings except for the hearing concerning the temporary restraining order and the Journal-Sentinel's motion to intervene. Judge Francis Wasielewski conducted that hearing.

[4] The Journal-Sentinel contended in the court of appeals that Judge Manian *had* performed a *de novo* review, but apparently abandoned this position at oral argument in that court. *See Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of Sch. Dirs.*, 220 Wis. 2d 93, 96 n.1, 582 N.W.2d 122 (Ct. App. 1998). The Journal-Sentinel does not seem to reprise the argument in this court. *See* Journal-Sentinel's Br. at 52 n.11. In any event, our review of the record supports the court of appeals' conclusion that Judge Manian did not conduct a proper *de novo* review. *See Milwaukee Teachers*, 220 Wis. 2d at 96 n.1.

[5] In addition, Judge Manian vacated the temporary restraining order and denied the plaintiffs' request for a stay prohibiting the release of the requested information. The court of appeals later determined that the denial of the stay was an erroneous exercise of discretion because MTEA had shown "more than a mere possibility of success on the merits." Ct. App. Order, Feb. 14, 1997, at 8. Accordingly, the court of appeals granted a stay pending appeal.

*Milwaukee Bd. of Sch. Dirs.*, 220 Wis. 2d 93, 582 N.W.2d 182 (Ct. App. 1998). The court of appeals concluded that the circuit court had subject matter jurisdiction in the case because *Woznicki* was not limited to cases in which a district attorney was the records custodian. *Id.* at 97–99. The court remanded the case to the circuit court with directions to conduct the *de novo* review by applying the balancing test discussed in *Woznicki. Id.* at 101. This court granted the Journal-Sentinel's petition for review.

## II.

¶ 9. We begin by examining the relevant portions of *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), the decision at the heart of this appeal. *Woznicki* involved open records law requests for the personnel file and telephone records of Thomas Woznicki, a school district employee. *Woznicki*, 202 Wis. 2d at 182 & n.1. Because Woznicki had been the subject of a criminal investigation, the requested records were in the custody of the district attorney. *Id.* at 182. The district attorney decided to release the records and notified Woznicki. *Id.* Woznicki sought an injunction in the circuit court to prevent release of the records. *Id.* The circuit court declined to issue an injunction, but ordered that the district attorney would be enjoined from disclosing the records pending resolution of the issue if Woznicki were to appeal. *Id.*

¶ 10. Woznicki appealed, and the court of appeals held that the personnel records of public employees were exempt categorically from disclosure. *Id.* Accordingly, the court of appeals reversed the circuit court's order and remanded the case, directing the circuit court to issue the injunction preventing disclosure of the records. *Id.* at 183.

¶ 11. This court accepted the district attorney's petition for review, reversed the court of appeals and remanded the case to the circuit court. *Id.* at 183, 195. In doing so, this court first held that the personnel records of public employees are subject to the open records law. *Id.* at 183. We also rejected the district attorney's argument that the open records law provided no right to bring a claim for an individual seeking to prevent disclosure of public records pertaining to himself or herself. *Id.* at 184–85. We stated:

> We agree with the District Attorney that the open records law does not explicitly provide a remedy for an individual in Woznicki's position. Yet a review of our statutes and case law persuades us that a remedy, i.e., *de novo* review by the circuit court, is implicit in our law.

*Id.* at 185. We analyzed several statutes and cases establishing that there is an important public policy interest in the protection of an individual public employee's privacy and reputation. *See id.* at 185–90. Without a right to review of records custodians' decisions, we reasoned, individuals affected by the release of requested public records would be left without a means of safeguarding their privacy and reputations. *Id.* at 190–91.

¶ 12. We then went on to explain the procedure to be followed by custodians and courts in considering requests under the open records law. We stated that prior to releasing records, custodians must apply the following balancing test:

> In the first instance, when a demand to inspect public records is made, the custodian of the records must weigh the competing interests involved and determine whether permitting inspection would

result in harm to the public interest which out-weighs the legislative policy recognizing the public interest in allowing inspection.

*Id.* at 191–92 (quoting *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979)). We continued:

> The duty of the District Attorney is to balance all relevant interests. Should the District Attorney choose to release records after the balancing has been done, that decision may be appealed to the circuit court, who in turn must decide whether permitting inspection would result in harm to the public interest which outweighs the public interest in allowing inspection.

*Woznicki*, 202 Wis. 2d at 192. As a corollary to our holding that an individual whose interests in privacy and reputation would be impacted by "the district attorney's potential release of his or her records," we determined that "the District Attorney cannot release the records without first notifying that individual and allowing a reasonable amount of time for the individual to appeal the decision." *Id.* at 193. We concluded:

> We agree with the policy and purpose underlying the open records law: to provide the broadest possible access of the public to public records. However, the right to public access is not absolute. In this case, Woznicki has important interests in privacy and reputation that warrant protection under our law.

*Id.* at 193–94.

■

¶ 13.　The central issue in this case is whether the *de novo* judicial review recognized in *Woznicki* as

implicit in the open records law is available when the public records custodian is not a district attorney. Resolution of this issue involves the application of a statute to an undisputed set of facts and interpretation of our prior decision in *Woznicki*. These are questions of law which we decide independently of the circuit court and court of appeals, benefiting, however, from their analyses. *Wisconsin Newspress v. Sheboygan Falls Sch. Dist.*, 199 Wis. 2d 768, 546 N.W.2d 143 (1996); *Nichols v. Bennett*, 199 Wis. 2d 268, 272–73, 544 N.W.2d 428 (1996). *See Ranes v. American Family Mut. Ins. Co.*, 219 Wis. 2d 49, 54, 580 N.W.2d 197 (1998).

¶ 14. This court's decision in *Woznicki* is grounded upon a substantial foundation of statutory and case law manifesting the importance placed by Wisconsin's legislature and courts upon protection of the privacy and reputations of individuals. We determined in *Woznicki* that a "specific legislative intent to protect privacy and reputation" is evident from at least four statutory sections. *Woznicki*, 202 Wis. 2d at 185–87. The first of these sections, Wis. Stat. § 895.50 (1993–94), recognizes the right of privacy and provides equitable relief, compensatory damages, and attorney fees to individuals "whose privacy is unreasonably invaded." § 895.50(1). *See id.* at 185–86.

¶ 15. The second section is Wis. Stat. § 19.85 (1993–94), which is part of Wisconsin's open meetings law. *See id.* at 186. Section 19.85 provides that governmental bodies may close meetings in certain situations which implicate individuals' privacy and reputational interests. *See* § 19.85(1)(b), (c), and (f). We pointed out in *Woznicki* that the open records law itself designates § 19.85 as indicating public policy for open records law purposes. *See Woznicki*, 202 Wis. 2d at 186 (citing Wis. Stat. § 19.35(1)(a)(1993–94)).

¶ 16. The third statute cited by this court in *Woznicki* is Wis. Stat. § 103.13 (1993–94), which requires employers to allow employees to view their personnel files unless certain exceptions apply. *See* § 103.13(2); *Woznicki*, 202 Wis. 2d at 186–87. Notably, one exception is that an employee is not to have access to the personal information of someone else if such access would unjustifiably invade the other person's privacy. § 103.13(6)(e). Employers who violate § 103.13 are subject to penalties. § 103.13(8).

¶ 17. The fourth statute we cited is Wis. Stat. § 230.13 (1993–94). *See Woznicki*, 202 Wis. 2d at 187. Section 230.13 allows the secretary and a division administrator of the Wisconsin Department of Employment Relations to keep records involving certain personnel matters, including disciplinary actions, closed to the public. §§ 230.03(1), (9), and (13); 230.13(1)(c).

¶ 18. We concluded in *Woznicki* that "[t]ogether, the above-referenced statutes evince a clear recognition of the importance the legislature puts on privacy and reputational interests of Wisconsin citizens." *Woznicki*, 202 Wis. 2d at 187. We then turned to a discussion of the relevant case law. *See id.* at 187–90. We relied primarily upon four cases: *Armada Broadcasting, Inc. v. Stirn*, 183 Wis. 2d 463, 516 N.W.2d 357 (1994); *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 430, 279 N.W.2d 179 (1979); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 137 N.W.2d 470 (1965); and *Village of Butler v. Cohen*, 163 Wis. 2d 819, 472 N.W.2d 579 (Ct. App. 1991), *review denied*, 475 N.W.2d 584 (1991). We found that "[o]ur case law has consistently recognized a public policy interest in protecting the personal privacy

and reputations of citizens." *Woznicki*, 202 Wis. 2d at 187.

¶ 19. The same statutory and case law forms the backdrop for our decision today. The relevant portions of the four statutory sections relied upon by this court in *Woznicki* have remained unchanged since the date of the *Woznicki* decision. The cases we examined in *Woznicki* likewise have not been modified or overruled. Moreover, in addition to this established precedent, we now have the *Woznicki* decision itself underscoring the important public interest in protecting persons' privacy and reputations and finding an implicit right of a person whose privacy and reputational interests are impacted by an open records request to seek *de novo* review of the decision to release the records. *See Woznicki*, 202 Wis. 2d at 185. Given this body of precedent, it is difficult to see how we could come to any conclusion in this case other than one consistent with the conclusion we reached in *Woznicki*.[6]

---

[6] The Journal-Sentinel argues that the legislative history of the open records law reflects that the legislature has consistently rejected any requirement that records custodians give records subjects notice before releasing records. According to the Journal-Sentinel, the only way this court could square *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), with this legislative history would be to limit *Woznicki* to district attorneys. For three reasons, we reject this argument.

First, we note that our primary concern in this case is not *Woznicki*'s establishment of a notice requirement. Rather, this case involves our determination in *Woznicki* that there is an implicit right to judicial review of records custodian's decisions. *See id.* at 192. Second, most of the legislative history cited by the Journal-Sentinel predates *Woznicki*, in which we determined that custodians do have a requirement to give notice. *See Woznicki*, 202 Wis. 2d at 193. Accordingly, it is clear that we considered and rejected an argument similar to the Journal-

¶ 20. The Journal-Sentinel urges us to limit the *de novo* judicial review discussed in *Woznicki* to cases involving records in the custody of district attorneys. Undeniably, *Woznicki* involved a records custodian who was a district attorney and who was referred to throughout the opinion by his job title of "District Attorney." However, this court, in *Woznicki*, did not touch upon the effect of the custodian's status as a district attorney until *after* we had analyzed the statutory and case law above, *after* we had held that Woznicki had the right to *de novo* review, and *after* we had explained in detail the duties of custodians and the judicial review procedure. *See Woznicki*, 202 Wis. 2d at 181–192. Only then, in the fifth paragraph from the end of the decision, did this court mention special concerns which are present when the records happen to be in the custody of a district attorney. *Id.* at 194.

¶ 21. Further, this court framed our discussion in *Woznicki* in terms of public records custodians; it was not limited to district attorneys.[7] None of the cases we relied upon as establishing the important public policy of protecting individuals' privacy and reputational

Sentinel's when we decided in *Woznicki* that there was a notice requirement. Finally, and most significantly, *Woznicki* has not been overturned by statute. *But see* 1997 Wis. Act 27 § 155j (legislation passed by the legislature and vetoed by the governor).

[7] Contrary to the Journal-Sentinel's assertion, we did set forth our holding in *Woznicki* in regard to public records custodians in general. *See, e.g., Woznicki*, 202 Wis. 2d at 192 (stating, "Although our previous cases have always involved a court's review of a custodian's denial of a records request, this does not change the fact that a custodian's balancing of interests for and against disclosure is a question of law for which a court can substitute its judgment.")

interests involved a district attorney as records custodian. *See Armada,* 183 Wis. 2d at 468 (involving a school district as custodian of the requested records); *Breier,* 89 Wis. 2d at 421 (chief of police); *Owens,* 28 Wis. 2d at 675 (mayor of the city of Waukesha); *Village of Butler,* 163 Wis. 2d at 823 (villages of Butler and Elm Grove). We conclude that the court of appeals correctly held that the *Woznicki* custodian's status as a district attorney was merely an additional reason supporting this court's holding, not the factor upon which the decision turned. *See Milwaukee Teachers,* 220 Wis. 2d at 99 n.2.

¶ 22. The key to determining the status of records under the open records law is the nature of the records, not their location. *Nichols,* 199 Wis. 2d at 274. "To conclude otherwise would elevate form over substance." *Id.* at 275. Records containing personal information about a school district employee implicate the exact same concerns of protection of privacy and reputation whether those records are in the hands of a school district, as in this case, or a district attorney, as in *Woznicki. See Woznicki,* 202 Wis. 2d at 212 (Abrahamson, J., dissenting). It would defy common sense to give an individual the opportunity to present arguments in favor of protecting his or her privacy and reputational interests when a district attorney holds such records only to turn around and deny that individual the same opportunity if the records are in the hands of another custodian.

¶ 23. In this case, the Journal-Sentinel seeks the names and school assignments of persons discharged due to misdemeanor convictions. Release of this information clearly would impact the privacy and

reputations of the plaintiffs.[8] It appears from the record that two of the plaintiffs had only a single misdemeanor conviction stemming from college incidents. Several of the misdemeanor convictions preceded the plaintiffs' termination from MPS by over ten years. Most of the plaintiffs had achieved satisfactory employment reviews, and by the time the case reached this court, six of the plaintiffs had been reinstated in their employment with MPS.[9] Disclosure of the plaintiff's

[8] The Journal-Sentinel presents several arguments aimed at persuading us that the public policy interests in disclosure of the information outweigh the public interest in protection of the plaintiffs' privacy and reputations. In essence, the Journal-Sentinel contends that, for various reasons, the plaintiffs have diminished privacy expectations. Among the cases Journal-Sentinel relies upon in support of these arguments are *State ex rel. Journal/Sentinel v. Arreola*, 207 Wis. 2d 496, 558 N.W.2d 670 (1996), *Wisconsin Newspress v. Sheboygan Falls School District*, 199 Wis. 2d 768, 546 N.W.2d 143 (1996), *Zinda v. Louisiana Pacific Corp.*, 149 Wis. 2d 913, 440 N.W.2d 548 (1989), and *Journal/Sentinel, Inc. v. School Board of Shorewood*, 186 Wis. 2d 443, 521 N.W.2d 165 (Ct. App. 1994).

We do not further address the Journal-Sentinel's contentions in this regard. The question before us is not whether an application of the open records law balancing test would favor release of the records. In contrast, the issue we face is whether the plaintiffs have *any* privacy or reputational interests which would be implicated by release of the records such that they may present arguments in the circuit court that the public policy interest in protecting their privacy and reputations outweighs the public policy interest in releasing the records. The relative weights of the competing interests is of no concern at this initial stage of the proceedings.

[9] The reinstatement of the six plaintiffs occurred as a result of arbitration arising from the collective bargaining agreement between the MBSD and the MTEA. The seventh plaintiff, who had resigned, did not seek reinstatement.

names and school assignments would permit plaintiffs to be identified by family members, persons in the community, co-workers, supervisors, and MPS students. Disclosure could harm plaintiffs' personal relationships, tarnish their reputations, and undermine their authority with students. As Justice Bablitch emphasized in his concurrence in *Woznicki*, "[p]rivacy and reputation are precious commodities." *Woznicki*, 202 Wis. 2d at 195 (Bablitch, J., concurring). Once personal information is divulged to the public, "the revealed person carries the consequences forever." *Id.* at 198. *See also Armada*, 183 Wis. 2d at 474–75.

¶ 24. To deny the plaintiffs in this case the right to a *de novo* review in the circuit court would be tantamount to depriving them of a forum in which to assert their important privacy and reputational interests. A public employee's interest in protecting his or her privacy and reputation might be wholly adverse to the interest of his or her public employer/records custodian. *See, e.g., Armada*, 183 Wis. 2d at 476. It would be untenable, in such circumstances, to force employees to rely on their employers to protect their interests. *See id.* An individual whose privacy and reputation might potentially be harmed by disclosure is in the best position to present arguments in favor of nondisclosure, given the significance and personal nature of the privacy and reputational interests. *See Woznicki*, 202 Wis. 2d at 191; *Armada*, 183 Wis. 2d at 476. Such an individual might well present arguments in favor of nondisclosure that the records custodian did not consider in evaluating the disclosure request, even though *Woznicki* requires custodians to consider "all the relevant factors."[10] *Woznicki*, 202 Wis. 2d at 191.

---

[10] An example is provided by the instant case. The plaintiffs argued in the circuit court that Nemoir should have taken sev-

¶ 25. The Journal-Sentinel contends that we differentiated district attorneys from other records custodians in two important ways in *Woznicki*. First, according to the Journal-Sentinel, we emphasized that district attorneys are secondary, rather than primary, records custodians. Second, the Journal-Sentinel contends that we highlighted district attorneys' broad police powers to bring information of a personal nature into the public arena.[11]

---

eral factors into account when determining whether to release the requested information, including the nature and staleness of their convictions, the plaintiffs' job performance, and the possibility of releasing the information but redacting plaintiffs' names and school assignments. Nemoir testified that he did not consider these items in performing the balancing test.

[11] The Journal-Sentinel, and the dissent, also argue that extending *Woznicki* to records custodians who are not district attorneys will result in impermissible delays in obtaining requested information. The Journal-Sentinel's argument is based upon *State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 595, 547 N.W.2d 587 (1996), in which this court determined that the statutory governmental notice requirement of 120 days did not apply to the open records law because it frustrated the purpose of the open records law provision stating that records custodians must either comply with or deny a records request "as soon as practicable and without delay." Wis. Stat. § 19.35(4)(a).

As the plaintiffs point out, however, "This litigation, which involved a challenge to the very process of holding a *Woznicki de novo* hearing, can in no way be compared to the routine administration of the *Woznicki* procedure." Pls.' Br. at 21. Had the circuit court performed a *de novo* review, it is likely that it would have delivered its decision shortly after the January 27, 1997, hearing, or just a few weeks after Nemoir notified the plaintiffs of his decision to release the records. *See, e.g., Kailin v. Rainwater*, 226 Wis. 2d 134, 137, 593 N.W.2d 865 (Ct. App.

¶ 26. We did state in *Woznicki* that district attorneys can "obtain records which they did not create and for which they are not the primary custodians." *Woznicki*, 202 Wis. 2d at 194. However, we did not

1999) (circuit court decision on *de novo* review rendered about six weeks after custodian's decision to disclose).

Moreover, *Auchinleck* predates *Woznicki*, in which this court declined to impose a blanket requirement on courts to speed the process of judicial review. In response to the *Woznicki* dissent's reference to *Auchinleck*, Justice Bablitch, the author of the majority opinion, stated in his concurring opinion that "[i]nappropriate delay, or special circumstances requiring expeditious decisions, can be dealt with quickly and summarily by the courts." *Woznicki*, 202 Wis. 2d at 198–99. We adhere to this principle. If courts find it advisable to expedite review in a particular case, we certainly encourage them to do so, but, consistent with *Woznicki*, we do not require it.

Certainly, we do not wish to see inordinate delay in the judicial processing of open records law cases. If experience after the issuance of this opinion shows that such delay is occurring at the circuit court or court of appeals level, this court might consider using its superintending power to ensure that priority is given to open records law cases. *See* Wis. Const. art. VII, § 3; *Arneson v. Jezwinski*, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996). As we emphasized in *Arneson*, however, we do not use our superintending power "lightly," and we decline at this time to do so. *Arneson*, 206 Wis. 2d at 226.

Finally, we choose not to accept the Journal-Sentinel's invitation to contemplate the appropriate standard of appellate review of a circuit court's *de novo* judicial review. We have discussed the standard of review in other cases in which we have actually reviewed circuit courts' decisions to compel or deny disclosure of records. *See Wisconsin Newspress*, 199 Wis. 2d at 782; *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979). Since the circuit court in the instant case did not engage in a *de novo* review, the question is not directly before us at this time.

further discuss the distinction between primary and secondary custodians or explain its import. As we have already pointed out, information in public records can be damaging to a person's privacy or reputation regardless of the identity of the custodian. Any custodian may have interests adverse to individuals whose reputation and privacy might be harmed by disclosure. *See, e.g., Armada,* 183 Wis. 2d at 476. Consequently, we do not find the primary/secondary distinction to be determinative of whether there is a right to *de novo* judicial review of a custodian's decision.

¶ 27. We also noted in *Woznicki* that district attorneys have "extraordinary police powers" allowing them to bring information of an extremely private nature into the public sphere. *Woznicki,* 202 Wis. 2d at 194. The common law exception which provides that district attorneys' case files are not open to public inspection was developed in part for this reason. *Woznicki,* 202 Wis. 2d at 194 (citing *State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 433–34, 477 N.W.2d 608 (1991)). As we have already explained, however, the location of information is irrelevant for purposes of determining whether it should be disclosed under the open records law. *See Nichols,* 199 Wis. 2d at 270. Because the nature of the information determines its status under the open records law, it does not matter whether highly personal information is in the possession of a district attorney or a public records custodian who is not a district attorney. *See id.* The effect of disclosure on the individual public employee's privacy and reputation is the same in either scenario, and under the rule of *Nichols,* so is its status under the open records law.

¶ 28. For these reasons, we hold that the implicit right of a *de novo* judicial review of a public records

custodian's decision recognized by this court in *Woznicki* is available to an individual public employee whose privacy or reputational interests would be impacted by disclosure of records requested under the open records law. This right of *de novo* judicial review applies whether or not the custodian of the records is a district attorney.

¶ 29. Few ought to be surprised by our holding today. In her dissent in *Woznicki*, then Justice Abrahamson (now Chief Justice) pointed out that the holding in the case applied to all public records custodians. *See Woznicki*, 202 Wis. 2d at 201 (Abrahamson, J., dissenting). She touched upon the very situation involved in this case when she stated, "The majority opinion's reasoning with regard to privacy and reputational interests would apply if, for example, the records in this case were in the possession of the school district rather than the district attorney." *Id.*

¶ 30. The court of appeals also anticipated our holding in this case. It applied *Woznicki* to public sector employers as custodians of public records in *Klein v. Wisconsin Resource Center*, 218 Wis. 2d 487, 495, 582 N.W.2d 44 (Ct. App. 1998). This court denied review in *Klein. See Klein v. Wisconsin Resource Center*, 219 Wis. 2d 923, 584 N.W.2d 123 (1998).

¶ 31. Finally, it should be noted that public employees have apparently routinely obtained *de novo* judicial review of the decisions of records custodians other than district attorneys. *E.g., Kailin v. Rainwater*, 226 Wis. 2d 134, 137, 593 N.W.2d 865 (Ct. App. 1999). Likewise, *Woznicki* has been widely interpreted by public entities as binding upon public records custodians who are not district attorneys. It is important to note that Nemoir crafted his letter to the plaintiffs in

this case under the assumption that *Woznicki* applied in this case.[12]

## III.

█

¶ 32. We conclude that the right of *de novo* judicial review provided by this court in *Woznicki* is available whether or not the custodian of the requested public records is a district attorney. Accordingly, we affirm the court of appeals and remand this case to the circuit court to conduct a *de novo* review of Nemoir's decision to release the records, performing the balancing test required by law.[13] Quite obviously, the information sought by the Journal-Sentinel is to remain confidential until such time as the circuit court is able to complete its review.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

---

[12] Nemoir stated in his letter to the plaintiffs that he was notifying them of his decision to disclose the information as a result of the *Woznicki* decision. He indicated that MPS would allow ten days from the date of the letter for the plaintiffs "to challenge MPS' decision in court, as provided for in the *Woznicki* decision." *See* Hearing Tr., Jan. 21, 1997, Pls.' Ex. 2.

[13] The Journal-Sentinel contends that rather than remanding the case, this court should perform the balancing test and determine whether the information in question ought to have been released. We decline to do so. We took the preferable course in *Woznicki* when we remanded the case to the circuit court for that court to determine whether the custodian applied the proper balancing test and, if so, to review *de novo* the custodian's decision to release the records. *See Woznicki*, 202 Wis. 2d at 195.

¶ 33. WILLIAM A. BABLITCH, J. (*concurring*). You are a private citizen. There is a great deal of personal information about you, your background, and your family in a document that is stored in a public office. Some of that information, if publicly released, is highly embarrassing. Some is potentially harmful to you and your family. Unknown to you, a request is made for that document. The custodian decides the document should be released under the open records law. Should you have the right to be notified and heard before the custodian releases the document? Should you have the right to have a neutral third party review the custodian's decision? The dissent says no. The majority says yes. I agree with the majority and write only to address the dissent.

¶ 34. The basic principle is fairness. Is it fair to deny a person who is about to have facts about his or her life revealed to the public the right to be heard and the right to have that decision reviewed? Is it fair to give the requester of that information the right to appeal if the request is denied (as provided by Wis. Stat. § 19.35(4)(b)), but not allow the subject of that request the same right?

¶ 35. Although the majority does not raise the issue to a constitutional dimension, I believe the lack of fundamental fairness raises due process issues.

> The root requirement of the Due Process Clause of the Fourteenth Amendment is " 'that an individual be given an opportunity for a hearing *before* he [or she] is deprived of any significant protected interest.' " *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985) (footnote omitted). The government must provide notice and some kind of hearing before it can lawfully deprive anyone of life, liberty, or property. By requiring the government to

800

follow appropriate procedures, the Due Process Clause promotes fairness in such decisions. *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

In his classic statement, Justice Brandeis characterized "the right to be let alone . . ." as the most comprehensive of rights and the right most valued by a civilized society. *See Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting). In *Wisconsin v. Constantineau*, 400 U.S. 433, 434 (1971), the U.S. Supreme Court held that a protectable liberty interest is implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him. . . ." *Id.* at 437.

*Woznicki v. Erickson*, 202 Wis. 2d 178, 196, 549 N.W.2d 699 (1996) (Bablitch, J. concurring).

¶ 36. The dissent does not speak to the issue of fairness. It speaks only to the issue of efficiency: it takes too long, says the dissent, to allow the person to object, to allow the person to appeal.

¶ 37. There is, admittedly, a tension between the interests sought to be protected by the majority opinion and the dissenting opinion.

¶ 38. The majority seeks to protect the interests of privacy, of personal reputation, of individual safety. The dissent seeks to protect the right of the public to know. The majority seeks to reconcile both interests. The dissent completely and unnecessarily sacrifices privacy, reputational, and safety interests in the name of efficiency.

¶ 39. Efficiency, the dissent says, trumps all.

¶ 40. Pencils have erasers. Courts allow appeals. Administrative decisions are reviewed. All because we recognize the inevitability of human error. Judicial review is one of the fundamental underpinnings of our Constitution. It protects against error. It protects the

individual against unnecessary intrusion of government into our private lives. The dissent, in its interpretation of the open records law, does not stop this intrusion, it fosters it.

¶ 41. Custodians of public records are human. And humans make mistakes. Witness the case of *Monfils v. Charles*, 216 Wis. 2d 323, 575 N.W.2d 728 (Ct. App. 1998). An anonymous call comes to the police department warning of an impending theft. The call is taped. The thief requests the tape. The custodian of the tape releases it to him. Monfils is later found brutally murdered. The alleged thief, and some colleagues, are convicted of murder. In retrospect, the release of the tape was a tragic mistake.

¶ 42. Or witness the case of *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 559 N.W.2d 588 (1997). Ms. Weiss requested that her residential information be kept confidential because of her fear of her abusive husband and his abusive and threatening telephone calls. He called the city, falsely identified himself, and requested the residential information, including the telephone number. The custodian of the record provided it to him. Subsequently, she was regularly telephoned at work by her husband, informing her he now knew her home address and telephone number, and that he would kill her and their two children. Her awareness that this was true, and her then existing financial inability to change her residence, caused her severe emotional distress. The release of the information sought was a tragic mistake.

¶ 43. These cases underline two basic realities: 1) not all requesters of public records are benign, public spirited citizens; and 2) custodians of public records make mistakes. Those mistakes can have tragic consequences. In *Monfils* and *Weiss*, great physical and

emotional harm resulted. We can only guess at the harm done to privacy, reputational, or safety interests in other cases when custodians make a mistake.

¶ 44. Total efficiency, i.e., the immediate release of a document, the dissent says, is necessary to maintain an effective open records law. I disagree for two reasons. First, many public records requests do not involve personnel at all, such as requests for minutes, government contracts, and the like. They are not affected by the majority decision at all. Second, adequate measures can be taken by this court, or the legislature, to assure a prompt review. The delay in this case could, in the future, be greatly ameliorated. Ways can be found to speed appeals, to accommodate all interests.

¶ 45. There are times when efficiency must be sacrificed for greater principles. If efficiency were the only sought after objective, we would scarcely have chosen democracy as our form of government, we would scarcely have chosen our constitution to be our guiding force. Efficiency is not always the lodestar of human achievement.

¶ 46. I prefer the road chosen by the majority opinion. Both constitutionally and statutorily, it is the correct road. It does not deny the information outright, as the dissent denies completely the right to be heard; it merely delays it. And delay seems a small price to pay for the interests that remain protected.

¶ 47. I join the majority opinion.

¶ 48. I am authorized to state that Justices DONALD W. STEINMETZ, JON P. WILCOX, and N. PATRICK CROOKS join this concurrence.

803

¶ 49. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. (*dissenting*). This case involves records containing information about a government employee whose salary is paid for with tax dollars. The majority opinion and concurrence ignore the legislature's statutory commands: Government employees are accountable to the public. The conduct of government employees in their official duties is subject to public scrutiny. Under the Wisconsin Open Records Law the people of the state are "entitled" to the "greatest possible information" about the "official acts" of the "employes who represent them."[1] "[D]enial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied."[2]

¶ 50. I dissent because the majority and concurring opinions rewrite the open records law, do away with the legislatively created "presumption of complete public access" to public records and severely damage the core function of the open records law.[3]

¶ 51. I willingly acknowledge the importance of privacy and reputational interests. What the majority and concurring opinions fail to acknowledge, however, is that the issue correctly framed is a balance between two public interests: privacy and open government. The majority and concurring opinions attempt to confuse the discussion by incorrectly framing the issue as privacy versus efficiency. The ploy is transparent.

¶ 52. The majority and concurring opinions obscure the discussion by refusing to recognize that in enacting the open records law the legislature has already performed the balance between privacy and open government. Both the majority and concurring

[1] Wis. Stat. § 19.31 (1997–98).
[2] Wis. Stat. § 19.31 (1997–98).
[3] Wis. Stat. § 19.31 (1997–98).

opinions attempt to redo the balance, not because the balance is legally infirm but because these justices would have decided the balance differently from the legislators. They proceed to substitute their own judgment in legislative matters for the clearly expressed judgment of the legislators, and in the process, they undermine Wisconsin's tradition of open government.

¶ 53. The legislature has established the procedure for access to public records. First the requester asks for the records.[4] Then the custodian of the records balances the interest of the public to be informed on public matters against the harm to reputation of the government employee.[5] If the records custodian denies public access to the records, the legislature allows the requester to go to court to get the records opened.[6] But if the custodian decides to release the record, the legislature has not provided the government employee who is the subject of the records with the opportunity to go to court to keep the records closed. The legislature makes the record custodians, not the courts, the decision makers for the release of records.[7]

¶ 54. I conclude that when a records custodian, other than a district attorney, balances the interests of privacy and open government and decides to release a public record that contains information about a government employee in response to a request made under Wisconsin's open records law, that government employee is not entitled to court review of the custodian's decision. Why do I reach this conclusion?

---

[4] Wis. Stat. § 19.35 (1997–98).

[5] *Wisconsin Newspress, Inc. v. Sheboygan Falls Sch. Dist.*, 199 Wis. 2d 768, 778, 546 N.W.2d 143 (1996).

[6] Wis. Stat. §§ 19.35 (4), 19.37 (1997–98).

[7] Wis. Stat. § 19.37 (1997–98).

Because that's what the legislature mandated. Accordingly, I dissent.

I

¶ 55. The opinion today significantly extends *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996). I write to state my disagreement with this extension. Before I proceed, I want the reader to know that I dissented in *Woznicki* and that I stand behind that dissent. *Woznicki* is, however, the law in Wisconsin, at least until it is reversed by this court or the legislature amends the law. I therefore accept *Woznicki* as binding precedent, albeit reluctantly.

¶ 56. The *Woznicki* court expressly limited its decision to records in the custody of a district attorney and explained why a district attorney is treated differently from other custodians of records. The *Woznicki* court stated its holding in the first paragraph of the opinion as follows: "We. . .hold that because of special public policy reasons that are raised when a district attorney chooses to release materials gathered during the course of a criminal investigation, the district attorney's decision to release these records is subject to de novo review by the circuit court." *Woznicki*, 202 Wis. 2d at 181. The *Woznicki* court restated its holding in the last paragraph of the opinion as follows: "[We] hold that the District Attorney's decision to release these records is subject to de novo review by the circuit court." *Woznicki*, 202 Wis. 2d at 295.

¶ 57. A portion of the reasoning in *Woznicki* can unfortunately be directed to all custodians of records. As I explained in my *Woznicki* dissent, "[a]lthough its holding is ostensibly limited to records held by a district attorney. . .the reasoning of the majority opinion is directed to the custodians of all records rather than to a

806

district attorney, the custodian in this case." *Woznicki*, 202 Wis. 2d at 201 (Abrahamson, J., dissenting).

¶ 58. But the reasoning of *Woznicki* need not be directed to all custodians. A district attorney serving as a record custodian is distinguishable from other record custodians, as the *Woznicki* opinion explained. That distinction can and should be maintained.

¶ 59. Extending the notice and judicial review processes set forth in *Woznicki* to all custodians of records, as the majority does today, contravenes the language, spirit and purpose of the open records law. The open records law explicitly states that "[e]xcept as otherwise provided by law, any requester has a right to inspect any record."[8] The open records law enacted by the Wisconsin legislature makes no exception for notice to the subject of a record request nor does it provide for judicial review of a custodian's decision to release a record. The majority opinion not only misinterprets the open records law but also writes a huge exception into it. If an exception to the open record law is needed to protect a subject of a record request, the legislature is the branch of government to enact it. This court should not legislate.

## II

¶ 60. Further, I dissent because the majority opinion fails to sufficiently justify its holding and expansion of *Woznicki*. One simple example should suffice. The legislative history of the open record law, as set forth in the Journal Sentinel brief, shows that the Wisconsin legislature rejected a proposed requirement that a custodian give the subject of a records request notice before releasing records sought by subpoena. *See*

---

[8] Wis. Stat. § 19.35(1)(a) (1997–98).

S. Amend. 2 to S. Subst. Amend. 1 to 1981 S. Bill 250 (LRB–0100/1); A. Amend. to 1981 S. Bill 250 (LRBa 2832/3). The Journal Sentinel argues that the only way to reconcile this legislative history with *Woznicki* is to limit the reach of *Woznicki* to district attorneys.

¶ 61. In footnote 6 the majority opinion dismisses this legislative history by saying it predates *Woznicki*. True, some of it does, but this footnote misses the point. One reason this court will re-examine a decision is that the decision has overlooked information in reaching its conclusion. The *Woznicki* court never considered this legislative history. None of the briefs in the *Woznicki* case mentioned the legislative history, and the legislative history does not appear in the majority, concurring or dissenting opinions of the *Woznicki* court.

¶ 62. Ironically, the majority also dismisses post-*Woznicki* legislative history. The legislature expressed its disapproval for a general pre-release notice requirement under the open records law in the 1997 biennial budget bill. 1997 Wis. Act 27 § 155j. Although Governor Thompson vetoed this provision on grounds that it was "non-budgetary and should be instead debated as a separate bill," he also declared that he "would be glad to work with the advocates of this provision on legislation that would preserve the spirit of our open records law." Governor's Veto Message, A.J. at 352 (Oct. 13, 1997).

III

¶ 63. Furthermore, I dissent because the majority opinion brushes aside the Journal Sentinel's practical argument that extending *Woznicki* will result in impermissible delays. In footnote 11 the majority opinion promises, as did the *Woznicki* opinion, that inappropriate delay can be dealt with summarily by

the courts. Yet it sets forth no expeditious procedure for handling *Woznicki* type proceedings. Furthermore the majority refuses to exercise its power to review the records and decide this case. Instead the majority remands the case to the circuit court for a decision and possible further appeal.

¶ 64. The majority opinion ignores the time-consuming trial and appellate processes that we know are occurring. For instance, in *Klein v. Wisconsin Resources Center*, 218 Wis. 2d 487, 582 N.W.2d 44 (Ct. App. 1998) (cited favorably by the majority opinion at 798), the request for records was made on June 30, 1996. The circuit court enjoined the custodian from releasing the records on July 16, 1996, and entered judgment on February 27, 1997. The court of appeals issued its decision on April 1, 1998, almost two years after the request for the records was made.

¶ 65. In *Kailin v. Rainwater*, 226 Wis. 2d at 134, cited favorably by the majority opinion in footnote 11 as illustrating a short time period for decision making under *Woznicki*, the request for the records was made on November 18, 1996. On January 9, 1997, the subject of the record request sought review of the custodian's decision to release the records in the circuit court. The circuit court issued its decision on February 10, 1998. The court of appeals issued its decision on March 31, 1999, more than two years after the request for the records was made. The *Kailin* case was, to use the majority's phrase, a routine administration of the *Woznicki* procedure.

¶ 66. Most recently, in *Kraemer Brothers, Inc. v. Dane County*, 229 Wis. 2d 86, 599 N.W.2d 75 (Ct. App. 1999), three years elapsed from the request for the records to the court of appeals decision.

¶ 67. In this case, more than two years have passed since the records custodian conducted his review and decided on January 3, 1997, to release the public records. A final decision about the records has not yet been made. The case is remanded for that decision. Under the majority opinion rendered today, similar delays will become commonplace.

¶ 68. This decision significantly erodes the open records law and open government in this state. I therefore dissent.

¶ 69. I am authorized to state that JUSTICE ANN WALSH BRADLEY joins this dissent.

¶ 70. David T. Prosser, Jr. (*dissenting*). I dissent.