STATE of Wisconsin EX REL. Norman C. HERRO
and Stuart Herro, Plaintiffs-Appellants,

v.

VILLAGE OF McFARLAND, Town of Dunn,
Village of McFarland-Town of Dunn Joint
Committee, Edmond Minihan, Renee Lauber,
Vicki Wangerin, Don Peterson, Michael Harried,
Patrick Miles and Pauline Boness,
Defendants-Respondents.

Court of Appeals

*No. 2006AP1929. Submitted on briefs April 30, 2007.
—Decided June 5, 2007.*

2007 WI App 172

(Also reported in 737 N.W.2d 55.)

750

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Joseph A. Ranney* and *Robert E. Shumaker* of *DeWitt Ross & Stevens, S.C.* of Madison.

On behalf of the defendants-respondents, Village of McFarland, Don Peterson, Michael Harried, Patrick Miles and Pauline Boness, the cause was submitted on the brief of *Lawrence E. Bechler* and *Matthew J. Fleming* of *Murphy & Desmond, S.C.* of Madison.

On behalf of the defendants-respondents, Town of Dunn, Edmond Minihan, Renee Lauber and Vicki Wangerin, the cause was submitted on the brief of *Richard K. Nordeng, Christopher B. Hughes* and *Bryan Kleinmaier* of *Stafford Rosenbaum LLP* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Norman and Stuart Herro appeal a summary judgment dismissing their complaint alleging that the Village of McFarland and the Town of Dunn violated the open meetings law. The Herros assert the Village and Town's joint committee, formed to resolve boundary issues, created an agreement in an impermissibly closed meeting. We conclude there was no violation of the open meetings law, WIS. STAT. § 19.81–19.98,[1] and we affirm the judgment.

## Background

¶ 2.   The Village is located along the northern edge of the Town. The Yahara River forms part of the boundary. The Village has been interested for some time in annexing areas south of the river. The Town has consistently opposed annexation, seeking to control growth and development.

¶ 3.   In 2001, after denying an annexation petition involving the property of several landowners, including the Herros, the Village board decided it should discuss boundary issues with the Town. As a result, the "Village of McFarland-Town of Dunn Joint Committee on Boundary Issues" was formed. Each government appointed its own members to the Committee. The Committee met several times in 2001 but suspended its activities in 2002 so the Village could work on its Smart Growth Comprehensive Plan.

¶ 4.   The Committee met again in June, July, and August 2004. Each meeting was noticed in accord with open meetings law requirements. The Town's represen-

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

tatives requested portions of the meetings be closed pursuant to Wis. Stat. § 19.85(1)(e), an exemption to open meeting requirements that permits a closed session to conduct public business "whenever competitive or bargaining reasons" so require. The Town was in negotiations with Richard and Barbara Sperle to purchase their property. However, the Town was willing to forego opposition to the Village annexing parts of the Town located east of the Village, including the Sperles' property, if the Village agreed not to annex portions of the Town south of the river, including the Herros' property. The Town was therefore concerned that if the Sperles knew the concessions it was willing to make to the Village, they would stop negotiating with the Town and approach the Village instead. The Village representatives agreed to close portions of the meetings.

¶ 5.    The last Committee meeting was August 17, 2004, and ended with a rough consensus on the boundary agreement terms. As relevant to the Herros, the Village agreed not to annex portions south of the river for twenty years. In October 2004, the Town's counsel prepared a draft of the agreement, the "Intermunicipal Cooperation Agreement," containing multiple changes from the original suggestions that came from the Committee.

¶ 6.    On November 15, 2004, the Village planning commission voted to forward the agreement to the Village board with neither a positive nor a negative recommendation. On November 17, 2004, the Herros filed a complaint with the district attorney, alleging the Committee meetings violated the open meetings law. The district attorney declined to take action.

¶ 7.    On January 24, 2005, the Village board had the boundary agreement on its agenda. Norman Herro inquired about public input opportunities while Stuart

Herro filed written opposition to the agreement. The Village president indicated a future public hearing would be held. Also on January 24, the Town posted on its website notice of an informational meeting to be held February 7. The Town further sent copies of the notice to four newspapers, a television station, and residents within areas covered by the agreement. The informational meeting was held as scheduled. On February 14, the Town planning commission had an open meeting, which Stuart attended, to discuss the agreement. The Town commission ultimately voted to recommend the Town board approve the agreement.

¶ 8. The Town and Village boards held final public hearings on February 28. At the Town meeting, the clerk read two letters into the record as well as summaries of two other letters. The Town board discussed the planning commission's recommendation, changes made to the agreement, and the agreement's purpose. The board entertained and answered questions from residents, proceeding to a vote when there were no more questions. The Town board unanimously approved the agreement.

¶ 9. At the Village board meeting, eight citizens, including Stuart, appeared to speak about the agreement. Board members offered their views on the agreement, then moved to a vote. The Village board also approved the agreement, although the president voted against it.

¶ 10. On April 22, 2005, the Herros commenced this action, seeking to void the agreement. The complaint had three counts: (1) an open meetings law violation; (2) failure to comply with WIS. STAT. § 66.0307; and (3) improper surrender of annexation powers through a contract. On the Herros' motion for partial summary judgment, the court struck certain affirmative

defenses but also dismissed count two and dismissed all claims against the Joint Committee.[2]

¶ 11. In May 2006, the Herros and the Town and Village filed cross-motions for summary judgment. In July, the court granted the municipalities' motions, concluding that even if the open meetings law applied, there was no violation because the meetings' closure was not contrary to Wis. Stat. § 19.85(1)(e). In addition, the court held that even if the open meetings law had been violated, the agreement was not voidable because the balancing test weighed in favor of upholding the agreement.[3] The Herros appeal.

## Discussion

¶ 12. We review summary judgments de novo, using the same methodology as the circuit court. *Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 12, 283 Wis. 2d 511, 699 N.W.2d 167. Interpretation of the open meetings statutes and the application of those statutes to the facts are questions of law. *Plourde v. Habhegger*, 2006 WI App 147, ¶ 6, 294 Wis. 2d 746, 720 N.W.2d 130.

¶ 13. At the outset, we note that the open meetings law applies only to "governmental bodies." The Village and the Town dispute whether the Committee fits that definition. The trial court assumed without deciding that the Committee was a governmental body; we will also proceed under that assumption.

---

[2] This order, dated December 22, 2005, is not at issue on appeal.

[3] The court also held that proper notice had been given under Wis. Stat. § 19.84(1)(b), and it dismissed the third count regarding annexation powers. These decisions are not before us on appeal.

¶ 14. The Herros have three basic arguments. First, the Committee could not close the meetings under WIS. STAT. § 19.85(1)(e), the bargaining exemption, because only the Town had a valid bargaining concern. Second, the boundary agreement is not valid simply because it was approved at open meetings if the negotiations went on in closed sessions. Third, the agreement must be voided as a matter of law. We address each argument in turn.

## I. The Bargaining Exemption

¶ 15. Under WIS. STAT. § 19.85(1)(e), "upon motion duly made and carried," a governmental body may meet in closed session for the purpose of "[d]eliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session." The Town requested closed sessions to protect its bargaining position with the Sperles. The Herros claim this exemption is inapplicable because the Village did not have the same bargaining interests.

¶ 16. Nothing in WIS. STAT. § 19.85(1)(e) suggests that a reason for going into closed session must be shared by each municipality participating in an intergovernmental body. Other exemptions to the open meetings law permit closed sessions "in certain situations which implicate *individuals'* privacy and reputational interests." *Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of Sch. Dirs.*, 227 Wis. 2d 779, 788, 596 N.W.2d 403 (1999) (emphasis added). And under WIS. STAT. § 19.85(1)(i), session may be closed to discuss "any and all matters related to acts by businesses ... which, if discussed in public, could adversely affect the business . . . ."

¶ 17. It is therefore not inconsistent with the open meetings law for a body to move into closed session under WIS. STAT. § 19.85(1)(e) when the bargaining position to be protected is not shared by every member of the body. Accordingly, we agree with the Town and the Village that once a vote passes to go into closed session, the reason for requesting the vote becomes the reason of the entire body.

¶ 18. Moreover, to invoke the open meetings law, the Herros have argued that the Committee "acted as an agent and subunit of both the Village and Town . . . ." But under this characterization, the Committee members, whether appointed by the Town or the Village, have an obligation to both principals, not just their appointing municipality. This means that all the representatives, including those from the Village, were entitled to act to preserve the Town's interests.

¶ 19. Finally, the purpose of the open meetings law is to give the public "the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." WIS. STAT. § 19.81(1). Prohibiting the Town from protecting its bargaining position while simultaneously participating in boundary discussions would be incompatible with the conduct of government business. It would, in essence, encourage inefficiency because the Town could never "multi-task." It would be forced to complete or abandon one set of negotiations before starting the next discussion with new parties. This delay would put a chill on intergovernmental cooperation as well as interactions with the public. The Committee properly invoked the WIS. STAT. § 19.85(1)(e) exemption.

## II. Approval in Open Session

¶ 20. "Any action taken at a meeting of a governmental body held in violation of [the open meetings law] is voidable . . . ." Wis. Stat. § 19.97(3). The Herros argue the approval of the agreement is voidable because, although approved at an open meeting, the negotiation of the agreement happened in closed session and the open meeting merely ratified that already agreed upon.

¶ 21. First, the facts do not bear out the Herros' assertion that the open meetings of the Town and Village Boards simply rubber-stamped the Committee's work. There were substantial changes between the last meeting of the Committee and the final approved agreement. The two planning commissions reviewed the agreements before sending them to the boards. The municipalities invited citizens to informational sessions and requested their comments. Board members in both locales discussed the terms, purpose, and goals of the agreement. Only after all of these actions did the boards proceed to vote.

¶ 22. Moreover, under Wis. Stat. § 19.97(3), "only actions taken during the closed sessions, not actions taken during the open session, would be voidable." *State ex rel. Epping v. City of Neillsville*, 218 Wis. 2d 516, 524 n.4, 581 N.W.2d 548 (Ct. App. 1998). Both boards approved the agreement at open session in full compliance with the open meetings law.

¶ 23. The Herros rely on *State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 508 N.W.2d 603 (1993), to assert "decisions made in an open meeting based on recommendations arrived at in prior closed meetings are voidable." However, we conclude *Hodge* is inapposite. There, the court considered a permit application from Hodge. As relevant to our discussion, the

town board had gone into closed session to debate the merits of the application, then returned to open session to unanimously deny the permit. The court addressed the exemption in Wis. Stat. § 19.85(1)(a) and concluded the town improperly invoked it, meaning its closed session was inappropriate.

¶ 24. Unlike *Hodge*, however, the boards approving the agreement here did not meet in an impermissibly closed session. Further, the boundary agreement was neither approved immediately after its inception in closed session, nor approved by the body that drafted it or in the manner originally drafted. The agreement that started with the Committee went through the planning commissions and was ultimately ratified by the boards in open sessions following a period of public commentary. *Hodge* does not address the factual scenario of the present case. Rather, the plain language of the statute excludes application of Wis. Stat. § 19.97(3) here because the boards approving the agreement were not in violation of the open meetings law.

### III. Whether the Agreement Must be Voided as a Matter of Law

¶ 25. Wisconsin Stat. § 19.97(3) not only provides that actions taken at meetings contrary to the open meetings law are voidable but also that "any judgment declaring such action void shall not be entered unless the court finds, under the facts of the particular case, that the public interest in the enforcement of this subchapter outweighs any public interest which there may be in sustaining the validity of the action taken." The Herros assert the trial court erred when it held that even if an open meetings law violation had occurred, the

759

balance supports upholding the agreement. They contend "voiding is the proper remedy." We disagree.[4]

¶ 26.   The statute does not provide that an action taken at a meeting that violates the open meetings law is automatically void, only that it is voidable by the court. Thus, the court turned to the balancing test required by statute. It noted the Committee's recommendation of an agreement was not a condition precedent to the boards approving an agreement. It considered that both municipalities took considerable steps to inform the public of the agreement and to discuss it with the citizenry. Further, the contents of the proposed boundary agreement were not a great secret—even the closed sessions had been noticed and were partially conducted in open session in 2004, in addition to the open hearings in 2001.

¶ 27.   Moreover, the agreement represents intergovernmental cooperation, encouraged by Wis. Stat. § 66.0301.[5] The agreement promotes sound land use planning for the Town and the Village as well as encouraging intelligent growth and planning without border wars. Even if there were a violation of the open meetings law, the court appropriately considered the public interest in upholding the agreement to outweigh an interest in enforcing the open meetings law.

*By the Court.*—Judgment affirmed.

---

[4] We note that we need not have addressed this question because we have held there was no violation by the Committee and the agreement was approved at meetings in compliance with the open meetings law.

[5] Wisconsin Stat. § 66.0301(2) provides, in part: "This section shall be interpreted liberally in favor of cooperative action between municipalities . . . in this state."