KRAEMER BROTHERS, INC., Plaintiff-Respondent,

v.

DANE COUNTY, Clerk of Dane County, Director, Dane County Department of Public Works, Director, Dane County Department of Administration, Defendants,

Thomas KIESGEN and the Building and Construction Trades Council of South Central Wisconsin, Intervenors-Appellants.†

Court of Appeals

*No. 98–3061. Submitted on briefs May 6, 1999.—Decided June 24, 1999.*

(Also reported in 599 N.W.2d 75.)

†Petition to review denied.

On behalf of the intervenors-appellants, the cause was submitted on the brief of *Kurt C. Kobelt* of *Kelly & Kobelt* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph A. Melli, Jack D. Walker* and *Devon R. Baumbach* of *Melli, Walker, Pease & Ruhly, S.C.*, of Madison.

Before Vergeront, Roggensack and Deininger, JJ.

VERGERONT, J.   This appeal arises out of the efforts of Building and Construction Trades Council of South Central Wisconsin and Thomas Kiesgen[1] to inspect and copy the payroll records of Kraemer Brothers, Inc. under Wisconsin's open records law. Kraemer Brothers is the general contractor for the expansion of the Dane County Exposition Center under a contract with Dane County. The trial court determined that the privacy interests of Kraemer Brothers' employees justified redacting their names from the records before releasing them. The Council appeals, contending that the public interest in disclosure of the names of employees working on a public project outweighs the public interest in protecting the privacy of the employees. We conclude that the public interest in protecting the privacy interests of these employees of a private company outweighs the public interest in disclosing their names. We therefore affirm.

## BACKGROUND

As a contractor on a public works project, Kraemer Brothers must pay its employees prevailing wage rates established by the Department of Workforce Develop-

---

[1] Thomas Kiesgen is the executive director of the Building and Trades Council of South Central Wisconsin. We refer to Kiesgen and the Council collectively as "the Council."

ment. *See* § 66.293, STATS.;[2] *see also* § 40.24, DANE COUNTY ORDINANCES. Section 66.293 requires that, before contracting for a public work, the municipality must request a determination of the prevailing wage rates and hours of labor from the department, unless the department has exempted the municipality because its own enactments set forth standards as high as or higher than certain statutory standards. *See* § 66.293(3) and (3)(c). The prevailing wage rates and hours of work determined by the department or the exempted municipality must be incorporated into the contract. Section 66.293(3).

Soon after the contract work began in March 1994, the Council made an oral request to Dane County to inspect Kraemer Brothers' payroll records on the project. In response, Ken Koscik, Dane County Director of Public Works, asked Kraemer Brothers to provide him with a copy of its June 1994 payroll records. Kraemer Brothers did that, not knowing of the Council's request and believing the County wanted the records for its own contract administration purposes. The records contained the names, addresses and social security numbers of employees and their classifications, wages paid and hours worked. Koscik gave a copy of these records to the Council.

---

[2] Section 66.293, STATS., was renumbered and amended by 1995 Wis. Act. 215, § 20. Therefore, the applicable statutory provisions to this open records request are those found in § 66.293, 1993–94. We refer to that version of § 66.293 in this opinion unless otherwise indicated. The substance of the provisions relevant to this opinion are not affected by the amendments. We refer to the Department of Workforce Development, formerly the Department of Industry, Labor and Human Relations, as "the department."

The following month Koscik asked Kraemer Brothers for copies of additional payroll records, and for payroll records of two subcontractors on the project. When Koscik explained that he was asking for the records because of an open records request by the Council, Norman Kraemer, president of the company, responded that he did not believe the County had a right to obtain the records for that purpose and would like a written statement of the County's authority for making the request. Subsequent correspondence from Cal Kornstedt, Dane County Corporation Counsel, stated that Kraemer Brothers' contract required that it submit payroll data as requested either by the architect/engineer or the project engineer.

In April 1995, the Council renewed its request, in writing, to Dane County for payroll records of Kraemer Brothers and other companies for work on the project, including the names, addresses, telephone numbers, classification, number of hours worked and wages and benefits earned by each employee. The County forwarded the request to Kraemer Brothers. Kraemer Brothers refused to provide the records, asserting it had no obligation to do so and also asserting an interest in its trade secrets[3] and a privacy interest on behalf of its employees in preventing the disclosure of their names, addresses, telephone numbers and social security numbers. Upon receipt of this response, Kornstedt wrote the Council explaining that Kraemer Brothers had refused access to certain information in the payroll records and that the records were not public records

---

[3] Kraemer Brothers asserted that, given the difficulty in obtaining employees skilled in the construction trades, identity of its employees was a trade secret. Whether this information constitutes a trade secret and justifies non-disclosure is not an issue on this appeal.

because they were neither in the custody of a person employed by Dane County or required to be provided to the County by contract.

About two weeks later, following a verbal directive from Dane County Executive Richard Phelps, Koscik wrote to Kraemer Brothers requesting that it file with the County Clerk its payroll records and those of certain subcontractors for the work on the exposition center pursuant to § 40.24, DANE COUNTY ORDINANCES. That provision requires contractors to keep payroll records containing the name, occupation, number of hours worked and wages paid for each employee. It also permits a representative of the County to inspect the records, and requires the contractor to file them with the County Clerk upon written demand by certain county officials. Because of Kraemer Brothers' concern with its employees' privacy interests, Koscik wrote, Kraemer Brothers could block out the names, addresses and telephone numbers of its employees. Kraemer Brothers complied with Koscik's request, redacting the employees' names, addresses and social security numbers from the records it filed.

However, the company was later advised by Kornstedt that Koscik's letter had contained a misstatement, and the ordinance required that the names of employees be included in the records filed with the County Clerk. Kraemer Brothers eventually provided the County with the payroll records with names included and the addresses and social security numbers redacted, while continuing to assert its trade secret and employees' privacy interests with respect to the names. By letter dated July 5, 1996, the Dane County Clerk informed Kraemer Brothers that she had decided that the public interest in disclosure of the payroll records with names outweighed both the possi-

ble harm to the public arising from disclosure and the company's claim that the names and addresses of its employees constituted a trade secret. She stated she intended to release the records, although not the social security numbers and the bank account numbers of individual employees, subject to a court action to contest the decision. In response Kraemer Brothers initiated this action, seeking a declaratory ruling, among others, that the County be prohibited from disclosing any personally identifying information contained in the payroll records.

The Council was granted permission to intervene in the action. It filed a motion for summary judgment seeking release of the payroll records, including the names, occupations, hours worked and wages paid. Kraemer Brothers also moved for summary judgment. In its decision granting summary judgment in favor of Kraemer Brothers, the trial court recognized that there was a strong public interest in ensuring that workers on public projects are paid the prevailing wage rate, but concluded there was no legitimate public interest in the disclosure of the names, addresses, telephone numbers or other identifying information contained in the payroll records.[4] It also concluded the employees had a substantial privacy interest in that information, which should be protected.

## DISCUSSION

■

Summary judgment is appropriate in cases where there is no genuine issue of material fact and the mov-

---

[4] Before the trial court, as on appeal, the Council argued for the disclosure of names, but not addresses or telephone numbers. We are uncertain why the trial court referred to addresses and telephone numbers in its decision.

ing party has established his or her entitlement to judgment as a matter of law. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296, 349 N.W.2d 733, 735 (Ct. App. 1984). Because there are no material facts in dispute in this case, we are concerned solely with the correct application of the open records law, §§ 19.31–19.37, STATS., to the undisputed facts.[5]

The open records law is based on "recognition of the fact that a representative government is dependent upon an informed electorate" and on the resulting "public policy . . . that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employes who represent them." Section 19.31, STATS. The general presumption is that public records shall be open to the public unless there is a clear statutory exception, a limitation under the common law, or an overriding public interest in keeping the public record

---

[5] The parties agree that the payroll records are public records within the meaning of § 19.32(2), STATS. Section 19.36(3), STATS., specifically addresses contractor's records, providing:

> (3) CONTRACTORS' RECORDS. Each authority shall make available for inspection and copying under s. 19.35 (1) any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority. This subsection does not apply to the inspection or copying of a record under s. 19.35 (1) (am).

*But cf. Building and Construction Trades Council v. Waunakee Community Sch. Dist.*, 221 Wis. 2d 575, 581, 585 N.W.2d 726, 728–29 (Ct. App. 1998) (§ 19.36(3), STATS., does not apply to payroll records of subcontractors that do not themselves have a contract with an authority), *review denied*, 222 Wis. 2d 675, 589 N.W.2d 629 (1998).

93

confidential. *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 156, 469 N.W.2d 638, 643 (1991). This case presents issues concerning the third basis for overcoming the presumption. The custodian of the records must therefore employ a balancing test to determine whether permitting inspection would result in harm to the public interest that outweighs the legislative policy recognizing the public interest in allowing inspection. *Woznicki v. Erickson*, 202 Wis. 2d 178, 183–84, 549 N.W.2d 699, 701 (1996).

■ When the disclosure of requested records implicates the privacy interests of individuals, those individuals have the right to judicial review of the custodian's decision to release those records. *See id.* at 193, 549 N.W.2d at 705 (individual whose privacy interests are implicated by the release of his or her records by district attorney has right to judicial review of custodian's decision to release records and to notification prior to release to facilitate judicial review); *Klein v. Wisconsin Resource Ctr.*, 218 Wis. 2d 487, 494, 582 N.W.2d 44, 46–47 (Ct. App. 1998) (reading *Woznicki* to apply whenever requested records pertain to an individual), *review denied*, 219 Wis. 2d 923, 584 N.W.2d 123 (1998); *see also Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of Sch. Dirs.*, 220 Wis. 2d 93, 101, 582 N.W.2d 122, 126 (1998) (applying *Woznicki* where school district was custodian of records), *aff'd*, No. 97–0308 (Wis. July 8, 1999).[6]

---

[6] In this case the custodian of the records notified Kraemer Brothers rather than the individual employees. There is no issue presented to us concerning the propriety of that notice. Kraemer Brothers states that it assumes the County notified it rather than the individual employees because public disclosure of the names of those employees was the contested issue. The

Because the balancing of the public interests for and against disclosure presents a question of law, the trial court undertakes a de novo review, and may substitute its judgment for that of the custodian. *Woznicki*, 202 Wis. 2d at 192, 549 N.W.2d at 705. Our review of the trial court's decision is also de novo, *Mayfair Chrysler-Plymouth*, 162 Wis. 2d at 165, 469 N.W.2d at 646, although we benefit from this trial court's thorough and thoughtful analysis.[7]

We analyze first the nature and strength of the public interest favoring disclosure of the employees' names. The Council argues that compliance with § 66.293, STATS., is in the public interest, and names are needed in order to permit the Council—or any other person or entity—to detect and report violations.[8] The underpinning of its argument is twofold. First, there is an important public purpose served by the prevailing wage law: to stimulate and protect the economic position of individual workers who are employed on public

Council does not offer another explanation for the manner of notice. The Council does assert, in one paragraph, that there is no authority for allowing Kraemer Brothers to raise the privacy interests of its employees on their behalf. This argument is not developed and was not presented in the trial court. We therefore decline to address it.

[7] The letter advising Kraemer Brothers of the County Clerk's decision to release the payroll records does not explain the basis for her conclusion that the public interest in release outweighs any possible harm to the public from release. We therefore do not have the benefit of the custodian's reasoning.

[8] We reject Kraemer Brothers' argument that the Council conceded the public did not have an interest in disclosure. In the context of arguing that it should be permitted to intervene, the Council stressed its own interests in the dispute. This is not a concession that the public does not have an interest in disclosure.

works' projects. *See Chauffeurs, Teamsters & Helpers General Union v. WERC*, 51 Wis. 2d 391, 399, 187 N.W.2d 364, 367 (1971). Second, the limitations on the statutory enforcement scheme make it desirable for the Council to monitor compliance on its own. Before discussing this argument in more detail, we observe that the policy underlying the open records statute is to inform the electorate regarding the "affairs of government" and the "official acts" of government employees. *See* § 19.31, STATS.; *see also State ex rel. Morke v. Record Custodian*, 159 Wis. 2d 722, 726–27, 465 N.W.2d 235, 237 (Ct. App. 1990). Therefore, the primary focus of the public interest inquiry is not compliance by contractors with the prevailing wage statute, but rather compliance by the contracting unit of government and the department with their statutory duties. With that focus, we review the enforcement provisions of § 66.293 and the corresponding county ordinance.

The municipality may not pay a contractor until the contractor has filed an affidavit stating that it has fully complied with the statutory requirements and has evidence of compliance from agents and subcontractors. Section 66.293(3)(h), STATS.; § 40.26, DANE COUNTY ORDINANCES. Both the department and the County may demand copies of payroll and other related information for inspection. Section 66.293(3)(i); § 40.24, DANE COUNTY ORDINANCES. The department must inspect the payroll records of a particular contractor or subcontractor upon any person's request, § 66.293(3)(m). When the department finds that a contractor has failed to pay the prevailing wage, it must notify municipalities, and the municipalities may not contract with that entity except as specified in the statute, § 66.293(3)(n). The county ordinance provides penalties for noncompli-

ance, which include termination of the right to complete the project and rejecting bids from that contractor for one year. Section 40.27, DANE COUNTY ORDINANCES. There is no provision in the ordinance for an inspection upon request, but § 40.26, DANE COUNTY ORDINANCES provides that the affidavit of compliance is "prima facie proof of such compliance in the absence of any complaint," thus indicating that the County investigates in response to complaints.[9]

The Council views these enforcement provisions as limited because they depend in some measure on the good faith of the contractor, and because there is no duty on the department to inspect the contractor's records, absent a request. The Council considers the option of requesting an inspection by the department to be inadequate, because § 66.293(3)(m), STATS., provides that if the contractor is found to be in compliance, the person making the requests shall pay the cost of the inspection. The Council acknowledges that it can discover certain aspects of a contractor's compliance with only the occupations, rates of pay and hours worked, but argues that it needs the names to perform meaningful monitoring. As an example, the Council explains, if it discovers that the wage rate for a particular classification is incorrect, it cannot file a complaint with the department without knowing the names of the

---

[9] Section 66.293(3)(a), STATS., also provides private remedies for employees who have not received the amount they are entitled to under the statute: they may sue the employer and recover double the amount owed as well as attorney fees and costs. Under § 66.293(3)(f), the employer must post at the job site the wage rates and hours determined by the department or the exempted unit, the remedy available under § 66.293(3)(a), and the records that the contractor must keep under § 66.293(3)(e).

employees within that classification. More importantly, the Council asserts, certain violations cannot be detected without the names of the employees: assigning an apprentice to perform higher paid journeyman work; wrongly classifying an employee as a journeyman; assigning work to an employee that is not within the classification for which he or she is being paid. If it has the names of the employees, the Council contends, it can contact them and ask them questions to verify the accuracy of the reported classifications, wages and hours worked.

Whether a contractor is engaging in any of these practices does not necessarily shed light on the conduct of government officials contracting on behalf of a municipality. Conceivably, as the Council argues, uncovering violations by contractors could lead to information that the municipality knew or should have known of those violations when they entered into the contract. And we agree that the public does have a strong interest in municipalities contracting only with companies that comply with the statute. Therefore, monitoring compliance by a contractor may shed light on the activities of government, but it is an indirect link. Moreover, because the department is obligated to inspect the contractor's records upon the request of any person, the value to the public of having other persons or entities conduct their own investigations to detect violations is considerably diminished, even taking into account the potential cost assessment.

The cost assessment, if compliance is found, is presumably intended to discourage persons from requesting an inspection if they have no basis to believe that a contractor is not complying. This arguably has the effect of discouraging some meritorious requests, with the result that some violations will remain unde-

tected. However, there are a variety of ways to gain some information about compliance before requesting an inspection by the department. Employees are informed through the posting at the job site, required by § 66.293(3)(f), STATS., of the records the employer must keep. Employees can gather information from other employees of the same contractor. The Council can provide information to and solicit information from employees through posters and fliers without knowing the names of employees. And as the Council concedes, certain violations can be detected from the records available without the names of the employees. Finally, the county ordinance indicates that the County responds to complaints, and there is no provision for cost assessment. This is another means of gathering information.

In short, the disclosure of the names on the payroll records would make it easier for the Council, or other members of the public, to gather information preliminary to requesting an inspection by the department, and would diminish the risk of a cost assessment by the department, thereby arguably encouraging meritorious requests for inspection. This may assist the department in its enforcement duties, which may result in more detections of violations, which may disclose whether and how the contracting municipalities are complying with their obligations under the statute and ordinance. We conclude there is a public interest in disclosure of the names, but, in light of the indirect link between that disclosure and the activities of the contracting municipalities, and in light of the existing means of assuring compliance by the municipality, it is not a strong one.

As further evidence of public interest in disclosure of the names, the Council emphasizes that the names

are required to be included in the contractor's records under § 66.293(3)(e), STATS., and § 40.24, DANE COUNTY ORDINANCES. This indicates, according to the Council, that the names are necessary in order to effectively monitor compliance with the prevailing wage law, and that these legislative bodies have already made the judgment that the public interest in having sufficient information to monitor compliance outweighs the privacy interests of individual employees. We disagree. The legislative bodies have determined they need the names to monitor compliance by the contractors; and that determination means the names are part of the contractor's records that are public records under §§ 19.35(1) and 19.36(3), STATS. However, this does not resolve the balancing test, but rather is the prerequisite to its application. *See Hathaway v. Joint Sch. Dist. No. 1*, 116 Wis. 2d 388, 394, 342 N.W.2d 682, 685 (1984); *Woznicki*, 202 Wis. 2d at 183–84, 549 N.W.2d at 701.[10]

_____

[10] The Council also relies on a letter from the administrator of the Equal Rights Division of the Department of Industry, Labor and Human Relations to the deputy attorney general opining that obtaining access to the records referenced in § 66.293(3)(e), STATS., "allows the public to readily determine if a contractor is or is not in compliance" and that the Department has "always encouraged the public to gather as many facts as possible before filing a complaint with the department to ensure that our resources are not misused." We considered this same letter in *Building and Construction Trades Council v. Waunakee Community Sch. Dist.*, 221 Wis. 2d 575, 588, 585 N.W.2d 726, 731 (Ct. App. 1998), *review denied*, 222 Wis. 2d 675, 589 N.W.2d 629 (1998), offered there by the Council because the letter expressed an opinion that the term "records" in § 66.293(3)(e) was synonymous with "records" in § 19.36(3), STATS. We concluded that it did not constitute legal authority or the type of agency decision to which we owe deference, but was

We now assess the public interest against disclosure, that is, the public interest in maintaining the confidentiality of the names of employees of a private contractor that has a contract with a government entity. *Woznicki* has firmly established that there is a public interest in protecting the personal privacy and reputations of citizens, and that interest must be considered as part of the balancing test before releasing public records implicating that interest. *Woznicki*, 202 Wis. 2d at 185–93, 549 N.W.2d at 702–05. However, Wisconsin cases have not had occasion to define the nature of that interest in a factual context similar to this. Prior cases addressing privacy have generally concerned records that could be damaging to reputation, *see, e.g., Woznicki*, 202 Wis. 2d at 189–90, 549 N.W.2d at 704; *Armada Broad., Inc. v. Stirn*, 183 Wis. 2d 463, 474, 516 N.W.2d 357, 361 (1994); or that could affect the safety, as well as the privacy of individuals. *See, e.g., State ex rel. Morke v. Records Custodian*, 159 Wis. 2d at 726, 465 N.W.2d at 236; *Klein v. Wisconsin Resource Ctr.*, 218 Wis. 2d 487, 496–97, 582 N.W.2d 44, 48 (Ct. App. 1998), *review denied*, 219 Wis. 2d 923, 584 N.W.2d 123 (1998). Neither safety nor harm to reputation is a factor in this case. Nevertheless, we can extract two useful principles from the case law.

First, while public employees have a lower expectation of privacy because of their choice of public employment, *see State ex rel. Journal/Sentinel, Inc. v. Arreola*, 207 Wis. 2d 496, 515, 558 N.W.2d 670, 677 (Ct.

simply a letter from an administrator. *Id.* As a letter, it sets forth part of, and does not add to, the Council's arguments on this appeal, which we address in the body of this opinion.

App. 1996),[11] the same is not true of employees of private contractors, who have no choice in whether their employer contracts with a governmental unit. *Cf. Klein*, 218 Wis. 2d at 494, 582 N.W.2d at 47 (for employees in private sector, personnel records are not accessible under the open records law). Second, because the identity and actual purpose of the requester of records is not part of the balancing test, *see State ex rel. Ledford v. Turcotte*, 195 Wis. 2d 244, 252, 536 N.W.2d 130, 133 (Ct. App. 1995), we cannot assume in our analysis that the employees' names will be made available only to the Council and only for the purpose of monitoring compliance with the prevailing wage law. If the names of the employees are available to the Council, they are available to anyone. This includes, for example, persons interested in marketing goods and services to employees in the construction trades; the further classification by occupation makes the information even more useful to marketers. True, such uses are not as convenient without addresses and/or telephone numbers, but those can be obtained for most employees once they are identified by name.

---

[11] In *State ex rel. Journal / Sentinel, Inc. v. Arreola*, 207 Wis. 2d 496, 515–16, 515 N.W.2d 670, 677–78 (Ct. App. 1996), we addressed a claim of privacy and reputational interests as one reason not to release records concerning use of deadly force by police officers. We concluded that the public had a compelling interest in monitoring the use of deadly force by police officers that outweighed any privacy/reputational concerns, but we also concluded that the officers had a right to keep their home addresses private. Because of the significantly different factual context in *Arreola* and our brief discussion there on the nature of the privacy interests at stake, that case does not assist us in defining or weighing the privacy interests of Kraemer's employees.

For further guidance we look to federal cases that have addressed requests for records under the Federal Freedom of Information Act that are similar to the Council's request.[12] These cases uniformly recognize that information on the earnings of an individual is included within the type of information that individuals working for private companies on public projects have an interest in keeping private. *See, e.g., Sheet Metal Workers Int'l Ass'n v. United States Dept. of Veterans Affairs*, 135 F.3d 891, 901 (3d Cir. 1998); *Painting Indus. v. United States Dept. of Air Force*, 26 F.3d 1479, 1484 (9th Cir. 1994); *Hopkins v. United States Dept. of Housing and Urban Dev.*, 929 F.2d 81, 87 (2nd Cir. 1991); *Painting and Drywall Work Preservation Fund, Inc. v. Dept. of Housing and Urban Dev.*, 936 F.2d 1300, 1302–03 (D.C. Cir. 1991). We find this position to be sound, and we adopt it.

■

We conclude that Kraemer's employees have a strong privacy interest in their names, particularly when coupled with their occupation, wages and hours, and place of employment, and that the public has a strong interest in protecting this privacy. We also conclude that this public interest substantially outweighs the public interest favoring disclosure of the names, such that, even applying the presumption in favor of disclosure, the names should not be disclosed. The

[12] The parties debate the relevance of the federal cases, with the Council arguing that we should not consider them because the language of the Wisconsin open records statute and the FOIA is not the same, and Kraemer Brothers taking the opposite position. We consider the cases helpful in defining the nature of the privacy interests at stake in this factual context, not in applying and resolving the balancing test required by Wisconsin statute and case law.

additional use that the names would serve to those interested in augmenting the department's monitoring of the contracting municipalities is too attenuated to outweigh the public interest in protecting the employee's privacy.

*By the Court.*—Judgment affirmed.