ATLAS TRANSIT, INC., Bee Bus Line, Inc., Dairyland Buses, Inc., Excel Bus Line, Inc., Johnson School Bus Service, Inc., Joy Farm Transportation, Inc., Laidlaw Transit, Inc., Lakeside Buses of Wisconsin, Inc., Lamers Bus Lines, Inc., Milwaukee Bus, Inc., Riteway Bus Service, Inc., Safe Line LLC, School Services & Leasing, Inc., Specialized Care Transport, Inc., and Suburban Services, Inc., Plaintiffs-Appellants,†

v.

Dr. Spence KORTE, Superintendent, Milwaukee Public Schools (or his Designee), Defendant-Respondent.

Court of Appeals

*Nos. 01–0189, 01–0295. Submitted on briefs September 4, 2001.—Decided November 13, 2001.*

2001 WI App 286

(Also reported in 638 N.W.2d 625.)

† Petition to review denied 1-29-02.

242

243

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Kevin J. Kinney* and *Mark J. Goldstein* of *Krukowski & Costello, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Roxane L. Crawford*, assistant city attorney, and *Grant F. Langley*, city attorney.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Atlas Transit, Inc., et al.[1] (collectively, the "bus companies"), appeal from the trial court's orders denying their requests for a permanent injunction and a declaratory judgment prohibiting the Milwaukee Public Schools records custodian (MPS) from releasing the first and last names and commercial driver's license numbers of all their bus drivers (except six drivers) who transport children for the Milwaukee Public Schools following an open records request made pursuant to WIS. STAT. §§ 19.31–19.39 (1999–2000).[2]

¶ 2. The bus companies argue that the trial court erred in affirming MPS's decision to release the information after balancing the public and private interests of those involved. The bus companies submit that under WIS. STAT. § 19.36(1)[3] this information is exempted from disclosure by federal law. Further, the bus companies argue that the trial court erred in requiring them, rather than MPS, to notify the bus drivers of their right

---

[1] The other bus companies who sued are Bee Bus Line, Inc., Dairyland Buses, Inc., Excel Bus Line, Inc., Johnson School Bus Service, Inc., Joy Farm Transportation, Inc., Laidlaw Transit, Inc., Lakeside Buses of Wisconsin, Inc., Lamers Bus Lines, Inc., Milwaukee Bus, Inc., Riteway Bus Service, Inc., Safe Line LLC, School Services & Leasing, Inc., Specialized Care Transport, Inc., and Suburban Services, Inc.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[3] WISCONSIN STAT. § 19.36(1) provides:

> **Limitations upon access and withholding. (1)** AP-PLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).

to file an objection to the release of information with the court. Finally, the bus companies submit that the trial court erred in determining that only six bus drivers should be exempted from the order out of the 801 drivers who filed an objection.

¶ 3. After balancing the rights of the interested parties, we are satisfied that the public interests in disclosure outweigh the private interests of both the drivers and the bus companies in withholding this information. Further, we determine the facts here are distinguishable from those in *Kraemer Bros., Inc. v. Dane County*, 229 Wis. 2d 86, 599 N.W.2d 75 (Ct. App. 1999), where we determined that the public interest in knowing this information was outweighed by the public's interest in keeping the information confidential, *id.* at 103, and we conclude that the sought-after information is not exempt under WIS. STAT. § 19.36(1). We also are satisfied that the trial court's decision to exempt only six bus drivers from the release order was proper. Therefore, we affirm. Finally, inasmuch as this is a discretionary appeal of two non-final orders under WIS. STAT. §§ 808.03(2) and 809.50, and the bus companies failed to appeal the trial court's order requiring them to notify their drivers of their rights to object, we decline to address that issue. *Cascade Mountain, Inc. v. Capitol Indem. Corp.*, 212 Wis. 2d 265, 268, 268 n.2, 569 N.W.2d 45 (Ct. App. 1997) (We may limit the issues on which an interlocutory appeal is granted, because review of every prior order in the action would contravene this court's general policy against piecemeal disposal of litigation.).

## I. BACKGROUND.

¶ 4. This appeal has its origins in a local television reporter's request to various bus companies who supply

school buses for the Milwaukee and Waukesha school districts for disclosure of the names and birth dates of all bus drivers who were then driving their school buses. The reporter stated that his interest in receiving this information was to ensure that the bus drivers had the "appropriate backgrounds, credentials and driving records to be operating a school bus." The bus companies informed the reporter, by a letter written by their attorney, that they were unwilling to disclose this information.

¶ 5. After receiving this correspondence, the reporter then made an open records request pursuant to Wis. Stat. § 19.35 to the Milwaukee Public Schools (MPS). The reporter sought the roster of drivers that the bus companies were required to provide to MPS under their written contracts with MPS to transport children to and from school. A contract provision required the bus companies to supply MPS with a roster of drivers, including the driver's first and last name, and the commercial driver's license number of each driver. The contract also required the identical information to be given for "stand by" drivers. After receiving the request and consulting with legal counsel, MPS wrote the bus companies stating that MPS had balanced the public and private interests of those involved and had determined that the requested information should be released. However, it advised the bus companies that MPS would delay release of the information for fourteen days to permit the bus companies or the bus drivers to challenge its decision in the circuit court. MPS explained that, under the dictates of *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), it believed the obligation to notify the drivers of the decision to release this information lay with the bus companies, not MPS.

¶ 6. As a result, the bus companies filed suit seeking: a temporary restraining order and a permanent injunction preventing MPS from releasing the information; a declaratory judgment declaring that MPS could not release information concerning the bus companies drivers; and reimbursement for the bus companies' legal fees. The trial court issued a temporary restraining order, ordered briefs, and set a date for a hearing. At a hearing held on November 6, 2000, the trial court conducted its own balancing test of the interests involved in the release of the requested information and decided that the public interests in knowing the names and commercial driver's license numbers of the MPS bus drivers outweighed any public or private interests in keeping the information confidential. The trial court then ordered the bus companies to notify their 1400 bus drivers that an objection could be filed, along with the reasons for the objection, by November 20, 2000. The trial court also appointed a referee who received and evaluated the 801 objections filed by the bus drivers. On December 20, 2000, the referee sent the trial court a report of his findings. After receiving the report, the trial court ordered the release of the first and last names and commercial driver's license numbers of all bus drivers who did not file an objection. Several weeks later, the trial court ordered the release of the information for 795 bus drivers who filed objections, exempting six drivers who were identified by the referee as having legitimate reasons for nondisclosure of their identifying information. Also exempt from the trial court's order were numerous employees who filed objections but whose names did not appear on any of the provided rosters.[4]

_____

[4] Pursuant to the holding in *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), the trial court ordered briefs to

¶ 7. The bus companies then filed two separate petitions for leave to appeal the two non-final orders releasing the sought-after information. This court accepted the petitions and consolidated the appeals. After granting the petitions, this court issued a stay of the release of all sought-after information while this matter was pending.

## II. ANALYSIS.

¶ 8. The bus companies complain that the trial court's ruling permitting the release of information concerning their school bus drivers was erroneous for several reasons. The bus companies argue that: (1) MPS failed to give any reasons for its decision that a balancing of the public and private interests involved in the disclosure of the information resulted in the public's right to know being greater than any private interests, and MPS was obligated, under *Woznicki* and *Klein v. Wisconsin Resource Center*, 218 Wis. 2d 487, 582 N.W.2d 44 (Ct. App. 1998), to communicate its analysis to them, and its failure to do so invalidates their decision; (2) Like *Kraemer Bros., Inc. v. Dane County*, 229 Wis. 2d 86, 599 N.W.2d 75 (Ct. App. 1999), where an open records request seeking wage information for private employees working on a public work was denied, *id.* at 103–04, there is an overriding public interest in keeping this information confidential; (3) The trial court erred in its determination that the public's right to know information about the school bus drivers trumps the bus drivers' and the bus companies' rights which favor the nondisclosure of this information, and failed to take

be submitted on the issue of whether the six people identified by the referee should have their names and commercial driver's licenses released. These six people are not involved in this appeal.

into account that the bus drivers would "suffer an immediate and irreparable invasion of privacy and reputational harm" as well as "suffer a risk to their lives and safety," and that the "requested personal information would constitute an unlawful disclosure of [the bus companies'] proprietary business information," exposing the bus companies to "legal and financial liability"; and (4) The sought-after information falls within the exception to the open records law embodied in Wis. Stat. § 19.36(1), exempting information prohibited by state or federal law. The bus companies further claim that because a federal law prevented this information from being disseminated by the Department of Motor Vehicles, MPS should not be allowed to release this information. We are not persuaded by any of their arguments.

A. *The balancing test favors disclosure.*

■

¶ 9. The standard of review in cases dealing with open records requests is found in *Woznicki*: "Our courts have repeatedly held that the balancing of the public interests for and against disclosure is a question of law to be reviewed by a court de novo." *Woznicki*, 202 Wis. 2d at 192.

■

¶ 10. The bus companies claim that MPS failed to follow the *Woznicki* holding directing MPS, before releasing information sought under the open records law, to "consider all the relevant factors in balancing the public interest and the private interests." *Id.* at 191. The bus companies proffer that because no reasons accompanied the letter sent to the bus companies setting out exactly what factors were considered in

250

arriving at a decision to release the information, MPS has not complied with the requirement and no information should be released. Relying on *Klein v. Wisconsin Resource Center*, 218 Wis. 2d 487, 582 N.W.2d 44 (Ct. App. 1998), they state that MPS has not fulfilled its duty under the case law. We disagree.

¶ 11. The MPS records custodian, after consulting with legal counsel, wrote and advised the bus companies that "After performing the balancing test required by law, I have determined that the public interest in releasing the rosters outweighs the harm to the public interest in permitting inspection."

¶ 12. We can find nothing in either *Woznicki* or *Klein* that requires the records custodian to prepare a detailed analysis of the factors used in applying the balancing test between public and private interests when determining whether to release information under WIS. STAT. § 19.35. Although the records custodian in *Klein* presented the requesters with a plethora of reasons for denying access to the requesters, the case law only mandates that the records custodian balance the competing interests for access against those favoring denial of the records. Thus, the records custodian is under no obligation to state his or her reasoning, only the resulting conclusion. As noted in *Woznicki*, "it is the duty of the custodian of public records, prior to their release, to consider all the relevant factors in balancing the public interest and the private interests." *Woznicki*, 202 Wis. 2d at 191. MPS's records custodian fulfilled his legal obligation when, after consulting with legal counsel, he "performed the balancing test required by law" and determined that the records should be released.

¶ 13. Moreover, even if an obligation exists to explain the decision to release the information, the trial court conducted a detailed balancing of the interests

involved. In its preliminary decision finding that the information should be released, the trial court declared:

> This court is obliged to observe that the schools of today hold a hope for tomorrow. No greater obligation of citizenship exists than that which gives our children an open and well administered school system. In the case at bar, it would appear clear that safe and well administered transportation to and from our public schools is of importance to the parents, to the future of our society, and most of all, of value to the children whose education is part of the charge to our government.
>
> . . . .
>
> Clearly, the exercise of due diligence on the part of the parents, the school system and the authorities, requires knowledge, and the failure to supply those names and commercial driver's licenses will adversely affect the confidence of the public. And in fact, by raising the issue, creating a suspicion that all might not be well in the transportation business.

¶ 14. "Whether harm from disclosure outweighs the public interest in permitting broad access to public records is a question of law to be reviewed de novo." *Klein*, 218 Wis. 2d at 496. In fulfilling our obligation on review, we are led to the identical conclusion as that of the records custodian and the trial court. First, the public policy behind the open records law clearly favors disclosure. This policy is articulated in WIS. STAT. § 19.31:

> **19.31 Declaration of policy.** In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of govern-

ment and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Thus, under the statute, we must presume that the records should be disclosed. Secondly, after examining the reasons given for and against releasing the names and commercial driver's license numbers of the bus companies' school bus drivers, we conclude that disclosure is necessary. As noted in the thoughtful and articulate decision of the trial court, the public's confidence in the school system and the public's interest in the safety of its children are implicated in this open records request. These are strong factors in favor of disclosure.

¶ 15. Further, we reject the bus companies' claim that the release of the drivers' names and commercial driver's license numbers would result in the bus drivers "suffer[ing] an immediate and irreparable invasion of privacy and reputational harm," as well as "suffer[ing] a risk to their lives and safety."

¶ 16. The bus companies believe that releasing the information of their bus drivers presents an identical situation as that found in *Milwaukee Teachers' Education Ass'n v. Milwaukee Bd. of School Directors*, 227 Wis. 2d 779, 596 N.W.2d 403 (1999), where the criminal records of teachers were sought. They contend

the release will reveal "embarrassing facts in some of [the bus drivers] personal histories" and "the release . . . would tarnish their reputations, and undermine their authority with students." Further, they contend the release of the requested information would endanger the bus drivers' lives and safety because the information "might assist third parties in discovering their home addresses and/or telephone numbers."

¶ 17. Although the release does invade the privacy rights of the individual drivers, the invasion is slight, as the only information given is the driver's name and commercial driver's license number. The address, age, and other identifying information of the bus drivers are not being released. Unlike the situation in *Milwaukee Teachers'*, the released information is not itself embarrassing, nor is it likely to lead others to discover the personal histories of the bus drivers. The bus companies give us no concrete examples of how revealing the name and commercial driver's license number of a driver will result in the discovery of other personal information. We also fail to see how knowing the name of a bus driver will adversely impact bus discipline. Thus, we conclude that the bus companies' prediction of dire consequences occurring if the bus drivers' names and commercial driver's license numbers are released is not supported by the record.

¶ 18. We are also not convinced by the bus companies' claim that the release of their bus drivers' names and commercial driver's license numbers will result in "an unlawful disclosure of proprietary business information." The underpinnings for this argument is the bus companies' contention that competitors will access this information and, after doing additional research, recruit their employees. The information will not lead to the automatic disclosure of the addresses of the bus

drivers given the limited information being released. Because the information being given is quite limited, it is unlikely that a company will go to the trouble of researching the names in order to recruit drivers. Moreover, had the bus companies been concerned about others learning their bus drivers' names, they should have negotiated a contract with MPS deleting this requirement. In any event, the possibility of competing bus companies recruiting each others' bus drivers does not defeat the public's right to know who is driving its school buses.

¶ 19. Finally, we decline to address the bus companies' complaint that the release of information concerning their bus drivers will expose them to legal and financial liability. *See State v. Waste Mgmt., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978) (stating that an appellate court is not a performing bear required to dance to each and every tune played on appeal). As argued by the City, "there is absolutely no support for the bald assertion . . . that failure on their part to contact each . . . school bus driver of MPS' decision to release [the sought-after information] would expose them to liability under sec. 895.50,[5] Stats." (footnote added).

---

[5] WISCONSIN STAT. § 895.50 provides:

**Right of privacy. (1)** The right of privacy is recognized in this state. One whose privacy is unreasonably invaded is entitled to the following relief:

(a) Equitable relief to prevent and restrain such invasion, excluding prior restraint against constitutionally protected communication privately and through the public media;

(b) Compensatory damages based either on plaintiff's loss or defendant's unjust enrichment; and

(c) A reasonable amount for attorney fees.

(2) In this section, "invasion of privacy" means any of the following:

(a) Intrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass.

(b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

(c) Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

(3) The right of privacy recognized in this section shall be interpreted in accordance with the developing common law of privacy, including defenses of absolute and qualified privilege, with due regard for maintaining freedom of communication, privately and through the public media.

(4) Compensatory damages are not limited to damages for pecuniary loss, but shall not be presumed in the absence of proof.

. . . .

(6) (a) If judgment is entered in favor of the defendant in an action for invasion of privacy, the court shall determine if the action was frivolous. If the court determines that the action was frivolous, it shall award the defendant reasonable fees and costs relating to the defense of the action.

(b) In order to find an action for invasion of privacy to be frivolous under par. (a), the court must find either of the following:

1. The action was commenced in bad faith or for harassment purposes.

2. The action was devoid of arguable basis in law or equity.

256

B. *No Federal or State law prevents the disclosure of the requested information.*

■

¶ 20. Next, the bus companies argue that the trial court erred in releasing the sought-after information because it fell within a statutory exclusion found in Wis. Stat. § 19.36(1) prohibiting the release when "[a]ny record . . . is specifically exempted from disclosure by state or federal law." They claim that the release of the names and commercial driver's license numbers of the bus drivers is information barred by the federally-enacted Driver's Privacy Protection Act (DPPA).

¶ 21. The DPPA prohibits a state department of motor vehicles from releasing "personal information." 18 U.S.C. § 2721–2725. Under the Act, "personal information" is defined as:

> [I]nformation that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). The bus companies concede that the act applies only to the Department of Motor Vehicles, not to MPS. However, they argue that because the DPPA prohibits the Department of Motor Vehicles from releasing this information, by analogy, MPS, another governmental agency, should not be allowed to release it either. Also, the bus companies contend that

---

(7) No action for invasion of privacy may be maintained under this section if the claim is based on an act which is permissible under ss. 196.63 or 968.27 to 968.37.

257

the underlying reasons for the DPPA's passage are present here. We disagree with both arguments.

¶ 22. We observe, as the bus companies concede, that the DPPA does not prohibit the release of this information by MPS. Therefore, there is no exclusion under WIS. STAT. § 19.36. Indeed, the statute limits the exemption only to "any record which is *specifically* exempted from disclosure by state or federal law." WIS. STAT. § 19.36(1) (emphasis added). This restriction on exempting only specific information prohibited from disclosure by state or federal law is in keeping with the public policy in this state that entitles persons to "the greatest possible information regarding the affairs of government," noting that "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." WIS. STAT. § 19.31.

¶ 23. Moreover, the purpose of the DPPA was to stop the practice of many state departments of motor vehicles from the wholesale selling of personal information to third parties. Clearly, that practice is not implicated here. Additionally, assuming the DPPA's reach included MPS, the act contains several exceptions that appear to exempt the sought-after information. Exceptions exist permitting disclosure in connection with matters of motor vehicle or driver safety (*see* 18 U.S.C. § 2721(b)), and use by an employer to obtain or verify information related to a holder of a commercial driver's license (*see* 18 U.S.C. § 2721(b)(9)). In sum, the DPPA does not prohibit MPS from releasing information on drivers collected by a private employer, and, even if it did, several exceptions appear to permit this type of use of the information.

C. *The trial court's decision to exempt only six bus drivers was proper.*

■

¶ 24. The bus companies argue that the trial court erred when it excluded only six bus drivers out of the 801 objecting bus drivers from its order. This followed the trial court's consideration of the report of the referee in which the referee evaluated the objections. The referee determined that only six of the drivers stated compelling reasons for the nondisclosure of their names and commercial driver's license numbers. The referee identified another group of 36 who claimed that they had restraining orders or other legal actions involving their safety. The referee suggested limiting the information being given for that group. Out of the remaining number, the vast majority of the objectors stated that they were objecting on the basis of the open records request being an invasion of their privacy. The bus companies assert that, at a bare minimum, the trial court should have excluded the 36 bus drivers who raised an objection based upon the existence of a restraining order or other legal proceeding and the bus companies urge this court to exclude all the names of bus drivers who registered an objection. We decline to do so.

¶ 25. After reviewing the record, we note that the trial court balanced the right of the objecting parties against the public's "right to know who in the public transportation community are entrusted with the safety of our children." It found, given the limited information to be released, the right of privacy did not defeat the rights of the public to know their bus drivers' names and license numbers. Although not articulated, the trial court implicitly found that the 36 people

259

having restraining orders or other legal proceedings would not be endangered by the release of only their names and commercial driver's license numbers.[6] As stated previously, the policy in this state presumes that information concerning the citizenry should be disclosed. As noted, the safety of our students while riding a school bus and public confidence in the school system are strong factors weighing in favor of disclosure.

¶ 26. We conclude that the public has a right to know the names of the individuals who are driving their children to and from school, and a right to be assured that every bus driver has a valid commercial driver's license. Accordingly, we affirm.

¶ 27. Finally, both parties ask us to seal the objections submitted by the bus drivers and the evaluation of these records by the referee. We agree. Our review of the referee's report discloses that in their written responses objecting to the release of the information concerning them, the bus drivers often revealed sensitive and confidential information to the referee which need not become part of the public record.

*By the Court.*—Orders affirmed.

¶ 28. SCHUDSON, J. (*dissenting*). Because the record establishes that the Milwaukee Public Schools' records custodian carried out the balancing test, required by *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), without accurate and appropriate consideration of federal law, I would remand.

---

[6] The referee apparently believed additional information such as addresses, phone numbers and employers was sought in the open records request.

¶ 29. On October 13, 2000, Michael Turza, MPS Director of Business Services, advised the bus companies:

> After performing the balancing test required by law, I have determined that the public interest in releasing the rosters outweighs the harm to the public interest in permitting inspection. Accordingly, after conferring with the City Attorney's Office, I have determined that it is appropriate to provide the requester with access to the rosters.

Mr. Turza's determination, apparently, was based on the October 10, 2000 letter from City Attorney Grant F. Langley and Assistant City Attorney Roxane L. Crawford answering MPS Deputy Superintendent Willie Jude's inquiry on how to respond to Fox 6 News' request for the bus driver rosters. The City Attorney's eight-page letter, while thorough and thoughtful in many respects, misconceived the relevant federal law in one critical way.

¶ 30. The federal Driver's Privacy Protection Act (DPPA), 18 U.S.C. §§ 2721–2725, prohibits state departments of motor vehicles from releasing "personal information," which the DPPA defines as:

> information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

18 U.S.C. § 2725(3). The bus companies concede that although the DPPA would preclude the state motor vehicle department from releasing the information requested in this case, it would not preclude MPS from

261

doing so. Significantly, however, the bus companies point out, and the City agrees, that, under *Kraemer Bros., Inc. v. Dane County*, 229 Wis. 2d 86, 599 N.W.2d 75 (Ct. App. 1999), a custodian of records, when balancing the interests for and against disclosure, properly considers the extent to which relevant federal law provides guidance.

¶ 31. MPS correctly contends that by excluding driving records from the federal definition of "personal information," *see* 18 U.S.C. § 2725(3), Congress made a "clear statement that the public has a strong interest in gaining access to an individual [bus driver's driving] record." But, inexplicably, MPS ignores the critical distinction between a bus driver's *driving record* and his or her *identity*. While, on the one hand, the federal law specifically exempts "information on vehicular accidents, driving violations, and driver's status" from the definition of protected "personal information," it does not exempt the "information that identifies an individual." *See* 18 U.S.C. § 2725(3).

¶ 32. Failing to acknowledge this critical distinction, the City Attorney failed to account for the possibility that, consistent with the apparent policy of the DPPA, MPS could both disclose "information on vehicular accidents, driving violations, and driver's status" and, at the same time, maintain the privacy of "personal information"—"information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information." *See* 18 U.S.C. § 2725(3).

¶ 33. The bus companies offer a clear and compelling argument: "Simply put, the drafters of the DPPA could never have intended that other government agen-

cies be compelled to disclose precisely the same 'personal information' protected by the DPPA. . . ." They may be correct. Here, however, MPS, misunderstanding the most critical component of the relevant federal law, could not have considered its disclosure options and, therefore, could not truly have considered the bus companies' argument.

¶ 34. A proper balancing test, under *Woznicki* and *Kraemer Bros.*, required an accurate reading of the DPPA. MPS, relying on the City Attorney, failed to recognize the critical distinction drawn by the DPPA and, therefore, failed to consider the possible propriety of disclosing the drivers' driving records while, at the same time, protecting the drivers' identities. Thus, the case should be remanded for MPS to properly weigh the competing interests and determine whether, and to what extent, disclosure is appropriate. Accordingly, I respectfully dissent.